**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Darryl BURTON, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 10, 2009.

Filed Aug. 3, 2010.

Mark Cichowicz, Public Defender, Philadelphia, for appellant.

Samuel H. Ritterman, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, BENDER, BOWES, GANTMAN, DONOHUE, SHOGAN and ALLEN, JJ.

OPINION BY BOWES, J.:

Darryl Burton appeals from the judgment of sentence of three to six years imprisonment followed by four years probation that was imposed after he was found guilty of aggravated assault, simple assault, and reckless endangerment at a nonjury trial. Appellant assails the sufficiency of the evidence supporting his conviction of aggravated assault. We affirm.

On June 1, 2007, Appellant, Darryl Burton, delivered a single blow to William Price, Jr., resulting in significant permanent injuries to the fifty-one-year-old victim. The parties stipulated to the following. Mr. Price was admitted to the Hospital of the University of Pennsylvania after being struck by Appellant. A June 13, 2007 examination by an attending neurosurgeon, Dr. Joshua Levine, revealed that the victim had incurred a traumatic brain injury, brain swelling, intracranial hypertension, was ventilator-dependent due to respiratory failure, suffered from renal failure, had an occipital bone fracture, and possibly sustained a spinal joint dislocation. At that time, Dr. Levine concluded that Mr. Price was "critically-ill and at high risk for sudden, fatal deterioration due to one or more of the listed medical conditions." Commonwealth's Exhibit 5 at 1.

Six days later, Dr. Eric Zager, another attending neurosurgeon at the hospital,

reported that Mr. Price remained unresponsive and had a subdural hemorrhage, subarachnoid hemorrhage to the right temporal lobe, a basal skull fracture, a left occipital depressed skull fracture, an intraparenchimal hemorrhage, bilateral inferior frontal lobel, dens fracture on C–2, and spinous fracture of T–4. Mr. Price was discharged to Moss Rehab Hospital on June 22, 2007, and as of July 11, 2007, was still in need of aggressive physical and occupational therapy.

On April 10, 2008, following a nonjury trial, Appellant was convicted of aggravated assault. In addition to the above-described stipulation, the Commonwealth presented three witnesses, the first of whom was the victim. Mr. Price was five feet five inches tall and weighed 162 pounds when the June 1, 2007 assault occurred. The victim remembered nothing about the day in question, and only recalled awakening at the Moss Rehab Hospital. Due to the incident, he lost his senses of taste and smell.

The Commonwealth's next witness, Alfonzo Moody, testified as follows. On the day in question, Mr. Moody and the victim were on Ella Street in Philadelphia when Appellant saw Mr. Price and started "hollering and screaming" the following, "[Y]ou're going to give me my money, you're going to give me my money." N.T. Trial (Waiver), Vol. 1, 4/10/08, at 17. Mr. Price responded that he made a payment on the amount that he owed Appellant every time that they encountered each other. Appellant retorted that he wanted all of his money immediately, to which Mr. Price replied that he did not have the required cash.

At that point, Appellant came "running over" to the victim and Mr. Moody, and "acted like he was getting ready to hit" the victim. *Id.* at 18. Since Mr. Moody "was in between them," Appellant did not attempt to land a blow. *Id.* Mr. Price told Appellant that he was not afraid of him, and Appellant stated, "[A]ll right, wait until we get at the end of the block." *Id.* at 18. Mr. Price, Mr. Moody, and Appellant proceeded to walk toward the end of the block.

When they reached that destination, the victim gave Mr. Moody the contents of his pocket, and "they ... told" Mr. Moody to "move out of the way." *Id.* at 20. Mr. Moody testified, "[W]hen I went to move out of the way to turn around ... that's when I heard Mr. [Price] hit the ground." *Id.* at 20. Mr. Moody explained that he heard a "grunt" as the victim was punched and struck the ground. *Id.* at 21.

The Commonwealth's final witness was the victim's son, William Price, III, who had observed his father, Mr. Moody, and Appellant walking down the street. Five minutes later, one of his neighbors told him that his father was badly hurt. William ran down the street and encountered Appellant "sitting in the middle of the street saying I got you, I got you, I told you I was going to get you." *Id.* at 41. William reported that as he made these remarks, Appellant was "smiling and laughing." *Id.* at 46.[1]

When Appellant was making these comments in a celebratory manner, the victim's appearance was as follows. Mr. Price was rendered unconscious, and his

---

1. Mr. Moody stated that he did not hear these comments and that Appellant appeared upset about Mr. Price's appearance. The trial court concluded that "neither version [was] entirely credible. In resolving the inconsistencies, the court was persuaded by the testimony of complainant's son regarding defendant's initial celebratory response." Trial Court Opinion, 7/25/08, at 6 n. 3. Thus, we must accept William's characterization of Appellant's actions after the assault for purposes of this appeal.

eyes had rolled back into his head so that only the whites were visible. In addition, he "had blood coming out of his nose, blood [o]n the back of his head," and his head was moving "like a worm." *Id.* at 42. The paramedic who responded to the scene of the crime confirmed that Mr. Price was unresponsive, bleeding from the mouth, and sweating profusely. *Id.* at 54.

At trial, Appellant "was asked to stand," and the trial court "assessed the defendant's stature relative to the victim, taking into account the decrease in the victim's weight since the date of the incident." Trial Court Opinion, 7/25/08, at 5 n. 1; N.T. Trial, 4/10/08, at 75. The trial court stated that Appellant "was significantly larger and stronger than the victim." *Id.* at 5.

■ The trial court adjudicated Appellant guilty of aggravated assault, simple assault, and reckless endangerment. This appeal followed imposition of the above-described judgment of sentence. A panel of this Court, with one Judge dissenting and one Judge concurring in the result, concluded that the evidence was insufficient to sustain Appellant's conviction of aggravated assault. The Court granted *en banc* review, and this matter is now ready for resolution. As noted, Appellant raises the single allegation that the evidence was insufficient to sustain his conviction.

In reviewing a claim regarding the sufficiency of the evidence, an appellate court must determine whether the evidence was sufficient to allow the fact finder to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. LaCava,* 542 Pa. 160, 171, 666 A.2d 221, 226 (1995). In doing so, a reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. *Id.* Furthermore, in applying this standard, the Common-

wealth may sustain its burden of proof by means of wholly circumstantial evidence. *Commonwealth v. Cousar,* 593 Pa. 204, 217, 928 A.2d 1025, 1032 (2007). When performing its review, an appellate court should evaluate the entire record and all evidence received is to be considered, whether or not the trial court's rulings thereon were correct. Additionally, we note that the trier of fact, while passing on the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. *Id.* at 217, 928 A.2d at 1032–33.

*Commonwealth v. Galvin,* 603 Pa. 625, 985 A.2d 783, 789 (2009).

Appellant was convicted under 18 Pa. C.S. § 2702(a)(1), which provides, "A person is guilty of aggravated assault if he ... attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Serious bodily injury is defined as, "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

The question of whether the delivery of a single punch is sufficient to sustain a conviction for aggravated assault was addressed by our Supreme Court in *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978). In that case, the defendant approached the victim, struck him once in the head with his fist, and walked away. The victim, who never lost consciousness, was transported to the hospital with a fractured nose, which the Commonwealth conceded did not constitute serious bodily injury, which is defined in 18 Pa. C.S. § 2301. The trial court convicted the

defendant of aggravated assault and we affirmed, but the Supreme Court reversed.

The Commonwealth therein maintained that even though the victim had not sustained serious bodily injury, the defendant's action of punching the victim's head with his fist was sufficient to demonstrate that the defendant had intended to inflict such harm. Our Supreme Court disagreed. It acknowledged that the head is a vital body part, but stated that "where the victim did not actually sustain the requisite serious bodily injury, we cannot say that the mere fact that a punch was delivered to that portion of the body is sufficient, without more, to support a finding that [a defendant] intended to inflict serious bodily injury." *Id.* at 889.

The *Alexander* Court continued that where the victim of an assault consisting of a single punch does not sustain serious bodily injury, "the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury." *Id.* The Court stated that "any evidence" of a defendant's "intent to inflict serious bodily injury" can "be gleaned from the other circumstances surrounding" the defendant's attack on the victim. *Id.* It then analyzed the case before it. The Court announced that the following factors can be utilized in ascertaining whether the defendant intended to inflict serious bodily injury by one blow: 1) if the defendant "was disproportionately larger or stronger than the victim;" 2) whether the defendant would have escalated his attack but was restrained from doing so; 3) whether the defendant was in possession of a weapon; and 4) "statements before, during, or after the attack which might indicate [defendant's] intent to inflict further injury upon the victim." *Id.* at 889. In *Alexander*, none of those circumstances was present;

instead, the defendant "delivered one punch and walked away." *Id.* The Court therefore concluded that the evidence was not sufficient to support the defendant's conviction of aggravated assault.

More recently, this Court, sitting *en banc*, reviewed the propriety of a trial court's ruling wherein the defendant's *habeas corpus* request to dismiss a charge of aggravated assault had been granted. *Commonwealth v. Patrick*, 933 A.2d 1043 (Pa.Super.2007). In that case, the victim and the defendant had an uncomfortable verbal exchange while waiting to be carded before entering a bar. The victim decided to leave the area and started to walk down the street toward a different bar "with his hands in his pockets." *Id.* at 1044. "Without warning," the defendant "approached the victim from the side and punched the victim on the side of his head in the temple," which "knocked the victim entirely off of his feet." *Id.* Since the victim's hands had been in his pockets, he was unable to brace against the fall and hit the sidewalk headfirst. The victim in *Patrick*, in contrast to *Alexander*, sustained serious bodily injury.

When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm. As we noted in *Patrick*, the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life. *Id.* at 1046. This Court concluded that a sufficient *prima facie* case of such intent had been produced in that case to permit the crime of aggravated assault to be submitted to the jury. We ruled that defendant's reckless indifference was substantiated by the "surprise attack" on an "unsuspecting victim" since the punch to the head, which is a vital body part, caused the man to fall "without reflexive protec-

tion." *Id.* at 1047. Therefore, we reversed the grant of *habeas corpus* relief.

In this case, the evidence unequivocally establishes that the victim sustained serious bodily injury; his injuries placed him at a substantial risk of dying. Indeed, Appellant conceeds the existence of such harm. Appellant's brief at 13; rather, he maintains that a lack of intent to inflict the horrific harm suffered by Mr. Price. Thus, we need to determine whether the circumstances surrounding the attack support the conclusion that Appellant intentionally or knowingly caused such injuries or if he proceeded in such a manner that manifested an extreme indifference to the value of Mr. Price's life.

The following factors herein establish Appellant's intended to cause serious bodily injury. First, Appellant was significantly stronger and larger than Mr. Price. Additionally, Appellant was ten years younger than the fifty-one-year-old victim. *See* N.T. Trial, 4/10/08, at 71. Appellant's actions and statements before and after

the assault confirm that he intended to inflict the victim's injuries. Appellant aggressively initiated a confrontation with Mr. Price, whose response was limited to stating that he was not afraid of him. After the attack, Appellant was viewed "sitting in the middle of the street saying I got you, I got you, I told you I was going to get you" while "smiling and laughing." N.T. Trial (Waiver), Vol. 1, 4/10/08, at 41, 46. While Appellant was making these remarks, the victim was unconscious, his eyes were rolled back into his head, blood was coming from his nose, his head was bloody, and he was involuntarily twitching. Appellant's gleeful remarks upon viewing the victim in that condition indicate that Appellant had intended that the victim suffer the resultant harm.[2]

Additionally, the evidence creates a reasonable inference that although Mr. Price knew that he and Appellant were going to engage in a fistfight, the victim was unprepared when he actually was struck.[3] Mr.

2. The *Alexander* case does not require us to ignore this piece of evidence. That Court expressly stated that "any evidence of [the defendant's] intent to inflict serious bodily injury must be gleaned from the other circumstances surrounding [the defendant's] attack on the victim." *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887, 889 (1978). Appellant's statements after the attack, even though they did not evidence an intent to inflict further harm, constituted events surrounding the attack that are relevant to a determination of Appellant's intent when he struck the blow. It must be recalled that in *Alexander*, the victim did not suffer serious bodily injury so that the defendant's intent to inflict further injury was particularly relevant. Herein, Appellant did not need to evidence intent to inflict further injury because the victim already suffered catastrophic harm.

3. As we clearly delineated in *Commonwealth v. Jones*, 242 Pa.Super. 471, 364 A.2d 368 (1976), an inference from the evidence can be made if the inference is more likely than not given the state of the facts. *Jones* provides

that where the "sole evidence of guilt or an element of the offense is inferential, then the inferred fact must follow beyond a reasonable doubt from the proved facts." *Id.* at 372. However, "where there is other direct evidence of guilt or of the element of the offense, then the Commonwealth need not rely solely on inference to meet its burden. In that situation, the inference is one piece of circumstantial evidence tending to prove the ultimate fact. The focus of our inquiry then becomes, as always, whether the totality of the evidence, together with all reasonable inferences, is sufficient in law to prove the defendant's guilt beyond a reasonable doubt." *Id.* "Therefore, where the Commonwealth introduces other facts tending to prove guilt or an element of the offense, the inferred fact need not follow beyond a reasonable doubt from the proved facts if the totality of the evidence establishes guilt or an element of the offense beyond a reasonable doubt." *Id.* at 372–73. *See also Commonwealth v. Deer*, 419 Pa.Super. 321, 615 A.2d 386 (1992).

Herein, the inference that the victim was unprepared when Appellant punched him

Moody specifically testified that "they," meaning both Mr. Price and Appellant, had asked him to move away from the vicinity. Mr. Moody continued that he had just started to initiate that maneuver when he heard the victim being struck. Specifically, Mr. Moody testified, "**when I went to move out of the way** to turn around ... that's when I heard Mr. [Price] hit the ground." *Id.* at 20 (emphasis added). This testimony supports that Appellant did not wait until Mr. Moody exited from harm's way and that the victim was unprepared for the blow in that he was punched while waiting for his friend to reach a safe vantage point. The victim then fell head-first to the pavement without the benefit of a reflexive action to protect against the fall. Indeed, on appeal, Appellant acknowledges that the nature of the punch was preemptive and that Mr. Price had his hands behind his back when Appellant landed his blow. Appellant's brief at 8.[4]

The fact that the victim was caught unaware is further supported by the severity of Mr. Price's injuries. As stated above, the victim suffered brain trauma as well as two facial and two spinal fractures. Indeed, throughout his brief, Appellant insists that the fall, rather than his punch,

caused Mr. Price's life-threatening damages. *Patrick, supra,* supports the conclusion that such evidence was sufficient to establish that Appellant had the requisite *mens rea* to sustain a conviction for aggravated assault.

We cannot accept Appellant's premise that the absence of any intent to continue the assault after he landed the single blow militates against a finding of intent to inflict serious bodily injury. Given the immediately-evident severity of the victim's harm, it was apparent that Appellant simply did not need to proceed further with his attack because the victim already had sustained serious bodily injury. The victim was unconscious and lying on the ground involuntarily twitching while blood flowed from his nose. Appellant's gloating remarks that he had accomplished his purpose clearly confirmed his desire to severely hurt Mr. Price, regardless of whether those statements established that he wanted to continue the attack. Merely because the comments following the assault did not evidence intent to further attack does not render those admissions irrelevant herein. *See* footnote 2, *supra.* As the trial court aptly noted, "Defendant's act of taunting the unresponsive

flows from both the eyewitness testimony that the victim was struck as soon as the witness began to move out of the way, as well as from the nature and extent of the injuries suffered by the victim. Simply put, it is more likely than not that the victim, while aware that he was going to fight once Mr. Moody moved aside, was not aware that Appellant was going to punch him at the precise moment Appellant leveled his attack. Given the witness's testimony indicating when Appellant initiated the blow as well as the nature and extent of the victim's injuries, it is more likely than not that the victim did not brace against the blow and was thereby unprepared.

The inference in this respect is not the sole evidence upon which we base the finding that Appellant intended to inflict serious bodily injury. That finding is also premised upon 1)

the disproportionate size and age between the victim and the assailant; 2) Appellant's aggressive initiation of the confrontation; and 3) statements Appellant made after the blow. Thus, the manner in which the blow was struck is not the "sole" evidence establishing Appellant's intent to inflict serious bodily injury. Thus, the inference can be made pursuant to a preponderance of the evidence standard.

4. This characterization is supported by the sentencing transcript, which states: Appellant "admitted that he [was] solely responsible for making the terrible rash decision to strike Mr. Price in a premature attempt to defend himself when Mr. Price reached behind his back during their dispute." N.T. Sentencing, Vol. 1, 5/22/08, at 5.

victim further evidenced his goal to seriously injure. After the complainant fell to the ground, defendant exclaimed, 'I got you.' Because the victim manifested physical signs of sustaining severe injuries, defendant's verbal outburst demonstrated the desire to inflict those very injuries." Trial Court Opinion, 7/25/08, at 6 (footnotes omitted).

*Commonwealth v. Roche,* 783 A.2d 766 (Pa.Super.2001), a nonbinding panel decision, does not comport with our holding herein. In *Roche,* we vacated an aggravated assault conviction when the victim, even though seriously injured, was only struck once. The defendant, who was twice as large and much stronger than the victim, challenged complainant to arm wrestle while they were located in a bar. The victim declined the challenge and started to leave. The defendant shoved the victim, who nevertheless exited the bar. The defendant followed the complainant from the bar and asked if he were "tough." *Id.* at 767. When the complainant turned around, the defendant delivered an unprovoked punch to the victim's head. *Id.* A police car arrived at that time, and Appellant ceased his attack. Despite the existence of many *Alexander* factors, we concluded in *Roche* that the defendant's action of "throwing one punch after using belligerent words" was insufficient to establish the *mens rea* necessary to sustain a conviction for aggravated assault. Inexplicably, in that decision, we did not consider the obviously pertinent circumstances that the victim was turning around when he was blindsided by a man who was twice as large and significantly stronger as well as the existence of other factors, including that the defendant aggressively initiated the attack, which was ceased due to the arrival of police. Given the presence of numerous factors establishing the defendant's intent to inflict serious bodily injury upon his victim as well as his actual accomplishment of that goal, it is clear that the *Roche* holding is not viable.

■ We are cognizant of our Supreme Court's pronouncement in *Commonwealth v. O'Hanlon,* 539 Pa. 478, 653 A.2d 616, 618 (1995), that, "Aggravated assault is ... the functional equivalent of a murder in which, for some reason, death fails to occur." In *O'Hanlon,* the Court held that driving while intoxicated, standing alone, is insufficient to establish the *mens rea* for aggravated assault since the act of driving drunk does not translate into an actual desire to injure someone, nor does it constitute an act so reckless that injury is virtually certain to occur.

This case bears no resemblance to *O'Hanlon.* There is no doubt that Appellant actually sought to hurt Mr. Price. Appellant provoked an altercation with the older, lighter, smaller man and landed the blow when the victim was not on guard. After the assault, Appellant rejoiced that he had inflicted the injuries that he caused to the victim.

In addition, the evidence herein establishes that while hospitalized, the victim was in real danger of dying. The medical stipulation stated that Mr. Price was at a "high risk" of sudden and "fatal" deterioration due to one or more of the injuries that he sustained in the assault. Commonwealth's Exhibit C–5 at 1. Thus, this case actually is one where death, for some reason, failed to occur despite the fact that the injuries could have caused that result.

As the Commonwealth's evidence established beyond a reasonable doubt that Appellant's intent fell within the parameters of the crime of aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1), the judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judge DONOHUE files a Dissenting Opinion in which P.J. FORD ELLIOTT, Judge MUSMANNO, and Judge BENDER join.

## DISSENTING OPINION BY DONOHUE, J.:

Because the learned Majority marginalizes Supreme Court precedent directly on point and parses the facts of the case in ways I believe were never contemplated by either the trial court or even the Commonwealth, I respectfully dissent. In *Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616 (1995), our Supreme Court clearly and unequivocally ruled that for aggravated assault the requisite malice requires that the crime was "the functional equivalent of a murder in which, for some reason, death fails to occur ..." *Id.* at 482–83, 653 A.2d at 618. Far from the "functional equivalent of murder," this case involves nothing more than a common street fight between two willing participants. Burton did not use a weapon or any escalating force, and there is no evidence of record to support any suggestion that he could reasonably have anticipated that serious bodily injury was the likely and logical consequences of the single blow he landed in the fight. Viewing the evidence in light most favorable to the Commonwealth, Burton was larger than his willing street fight opponent and Burton threw the first expected punch which tragically resulted in serious injuries to his opponent. Under *O'Hanlon* and other precedent, this is not, as a matter of law, aggravated assault.

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life ..." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as bodily injury "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Where, as here,[1] a victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent. *Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa.Super.2007)(*en banc*). Rather, the Commonwealth must prove only that the defendant acted with malice, which is defined as acting recklessly under circumstances manifesting an extreme indifference to the value of human life.[2] *Id.; Commonwealth v. Nichols*, 692 A.2d 181, 185 (Pa.Super.1997). To rise to the level of malice, an offensive act must be performed under circumstances which "almost assure that injury or death will ensue." *O'Hanlon*, 539 Pa. at 483, 653 A.2d at 618; *see also Patrick*, 933 A.2d at 1046; *Commonwealth v. Payne*, 868 A.2d 1257, 1261 (Pa.Super.2005), *appeal denied*, 583 Pa. 681, 877 A.2d 461 (2005) ("[t]o prove malice, 'it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm' ").

In *O'Hanlon*,[3] our Supreme Court made clear that the crime of aggravated assault

---

1. Burton acknowledges that he caused Price to suffer serious bodily injury. Appellant's Brief at 10.

2. Malice exists where there is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular

person may not be intended to be injured." *Commonwealth v. Bruce*, 207 Pa.Super. 4, 916 A.2d 657, 664 (2007) (citation omitted).

3. The Majority refuses to apply the legal principles set forth in *O'Hanlon* to this case, noting factual differences between the two cases. Majority Opinion at 605. Respectfully, while it is true that *O'Hanlon* involved a car crash

is "the functional equivalent of a murder in which, for some reason, death fails to occur," and elaborated upon the degree of culpability that must be proven to support a conviction under section 2702(a)(1):

> [F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue. The recklessness must, therefore, be such that life threatening injury is essentially certain to occur. This state of mind is, accordingly, equivalent to that which seeks to cause injury. Examples of such behavior make the distinction clear. In *Commonwealth v. Daniels,* 467 Pa. 35, 354 A.2d 538 (1976), appellant had fired a gun into a crowd; in *Commonwealth v. Laing,* [456 A.2d 204 (Pa.Super.1983)], appellant drove his car into a crowd, after having aimed it at an individual; in [*Commonwealth v.*] *Scofield,* [521 A.2d 40 (Pa.Super.1987)], the appellant drove at a pedestrian. *[See also] Commonwealth v. Hlatky,* [626 A.2d 575 (Pa.Super.1993)];

*Commonwealth v. Rohach,* [496 A.2d 768 (Pa.Super.1985)]. In each of these instances, the defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions. In each case, the consequence was ignored.

*O'Hanlon,* 539 Pa. at 482–83, 653 A.2d at 618.

Since Burton admits that his actions caused serious bodily injury, this Court should limit its analysis to whether the Commonwealth proved beyond a reasonable doubt that he acted with malice, i.e., with an extreme indifference to the value of human life under circumstances which almost assured that injury or death would ensue. Burton argues that the evidence presented at trial failed to prove that he acted with malice, claiming that although he threatened to fight Price and then punched him, he neither threatened to kill or inflict serious bodily injury upon Price, nor used a deadly weapon on him. He notes that he did not employ escalating force on Price, "sucker punch" him,[4] or

resulting from a driver under the influence of alcohol rather than (as here) a punch to the face, both cases involve sufficiency of the evidence claims for the crime of aggravated assault. More importantly, both cases present precisely the same legal issue for resolution, as both identically involve an appellant having inflicted serious bodily injury on a victim, thus requiring the Commonwealth to prove that the appellant acted with malice. *See, e.g., Patrick,* 933 A.2d at 1046.

*O'Hanlon* constitutes our Supreme Court's most recent pronouncement of the relevant legal principles applicable to proof of malice in an aggravated assault case where the appellant has inflicted serious bodily injury. As a result, this Court must apply those legal principles in resolution of this case. *See, e.g., Commonwealth v. Warrick,* 415 Pa.Super. 385, 609 A.2d 576, 580 n. 4 (1992), *allocatur denied,* 534 Pa. 639, 626 A.2d 1157 (1993) (as an intermediate appellate court, the Superior Court is bound by the decisions of the Pennsylvania Supreme Court, and absent a legally

relevant distinction between a previous decision by the Pennsylvania Supreme Court and a case before the Superior Court, this Court is obliged to follow the mandate of the prior Supreme Court ruling).

4. The Majority's contention that the victim in this case "was unprepared when he was actually struck," Majority Opinion at 603 & n. 3, is wholly unsupported by the record on appeal. In particular, the record does not reflect that either the Commonwealth or the trial court (as the trier of fact) ever even suggested (either at trial, in the Rule 1925(a) opinion, or in appellate briefs) that Price was anything other than a willing participant in a common street fight. Indeed, Price and Burton both walked to a different location to engage in the fight (the end of the block), and Price removed items from his pockets and gave them to Moody in preparation for the fight. N.T., 4/10/08, at 18, 20. Moody testified merely that he heard a punch and a grunting noise as he stepped out of the way

otherwise continue to assault him once he was rendered helpless. Appellant's Brief at 8, 14. Instead, Burton contends that he rendered a single blow, from which "such terrible consequences could not have been reasonably expected." *Id.* at 14.

Burton directs our attention to a panel decision of this Court presenting facts substantially similar to those in this case. In *Commonwealth v. Roche,* 783 A.2d 766 (Pa.Super.2001), *allocatur denied,* 568 Pa. 736, 798 A.2d 1289 (2002), while drinking in a bar Roche asked his victim if he wanted to arm wrestle. Roche was twice as large and appeared to be much stronger than his victim. After the victim and his friend left the bar, the defendant and his friend followed them into a nearby alleyway. The defendant asked the victim "Are you a tough guy?" and delivered a single closed-fist blow to the victim's left eye once he turned around. The victim fell to the ground, his head struck the concrete, and he was rendered unconscious. He was subsequently hospitalized for five days during which it was determined that he had suffered serious injuries to his head and eye. After a bench trial, the defendant was found guilty of aggravated assault, simple assault and REAP.

On appeal, the defendant argued to this Court that the evidence was insufficient to sustain his aggravated assault conviction because his "single weaponless punch to the victim's head did not demonstrate the requisite intent on his part to cause the victim serious bodily injury nor did the single punch evidence a heightened degree of recklessness on his part." *Id.* at 768. We concluded, *inter alia,* that the facts of the case did not establish that Roche acted with the requisite malice required to support a conviction for aggravated assault. *Id.* at 771. In finding that the evidence was insufficient to prove that Roche acted recklessly, we found:

> Appellant's act of throwing one punch after using belligerent words was clearly insufficient to establish that he acted with such a heightened degree of recklessness that he was *virtually assured that death or serious injury would occur from his act.* Appellant was not, nor could he be, *virtually or even reasonably certain that death or serious injury would be the likely and logical result of his lone punch.* This was not the functional equivalent of a murder in which for whatever reason death failed to occur.

*Id.* at 772 (emphasis added).[5]

Burton also compares the facts of his case to those presented in *Commonwealth*

from between the combatants, after both Price and Burton had demanded that he do so. Moody did not testify regarding how long it was from the time he started to move out of the way until the time when he heard the punch, or otherwise suggest any reason to suspect that Burton had hit Price when he was not suspecting it. N.T., 4/10/08, at 20–21. Even when viewing the evidence in a light most favorable to the Commonwealth as verdict winner, inference evidence must follow beyond a reasonable doubt from facts proved at trial. *Commonwealth v. Sojourner,* 268 Pa.Super. 472, 408 A.2d 1100, 1104 (1978). No evidence supports a reasonable inference of a sucker punch in this case. Instead, the eyewitness testimony from Moody

establishes that Burton and Price intended to fight each other and that Price and Burton jointly signaled their intention to begin the street fight by demanding that Moody get out of the way. *Id.* at 20.

5. In *Patrick,* we held that a defendant acted with "reckless indifference under circumstances which virtually assured serious bodily injury" where he "sucker punched" his victim after getting into an altercation with him at a bar. *Patrick,* 933 A.2d at 1047. The victim in *Patrick* had his back to his assailant and his hands in his pockets at the time of the blow, which rendered him unable to stop his fall. In *Patrick,* we distinguished *Roche* by noting that the defendant in *Roche* challenged the

*v. Magnelli,* 348 Pa.Super. 345, 502 A.2d 241 (1985). In *Magnelli,* the defendant grabbed a police officer and threw him into nearby concrete steps after he and another officer arrested the defendant's brother for disorderly conduct. The officer suffered what was conceded to be serious bodily injury by the defendant. On appeal, this Court found the evidence insufficient to establish that the defendant had acted recklessly "under circumstances manifesting an extreme indifference to the value of human life." *Id.* at 243.

After reviewing the law pertaining to recklessness and aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), I cannot agree with the Majority's conclusion that the evidence proved, beyond a reasonable doubt, that Burton displayed the level of recklessness required for a conviction under that section. The facts of this case simply do not present anything approaching "the functional equivalent of a murder in which, for some reason, death fails to occur." *O'Hanlon,* 539 Pa. at 483, 653 A.2d at 618. Instead, this case involves a common street fight between two willing participants. Unlike in *Patrick,* where the victim was caught unawares by a sucker punch, here both parties walked to the end of the block knowing that a fight was imminent. Burton did not use a weapon. After he delivered a single blow with his fist, Burton made no attempt to continue punching or hitting his immobilized victim.[6] While

it is true that after the punch Burton said "I told you I was going to get you," these words at most reflected Burton's intention to *injure* Price. They do not, however, establish that Burton intended to cause *serious bodily injury or death* to Price, or that he had any reason to believe that a life-threatening injury was "essentially certain to occur" as a result of the single punch, per the standards articulated by our Supreme Court in *O'Hanlon.*

Moreover, Burton's behavior did not rise to the level of the examples of recklessness provided in *O'Hanlon, e.g.,* firing a gun into a crowd, driving a car into a crowd or at a pedestrian. In those cases, the defendants could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of their actions and that they ignored that risk. The evidence does not support a similar conclusion with respect to Burton's street fight with Price.

In its written opinion submitted pursuant to Pa.R.A.P.1925(a), the trial court did not discuss the holding of *Roche* or engage in an analysis of recklessness pursuant to the standards set forth by our Supreme Court in *O'Hanlon.* Instead, it analyzed whether Burton possessed the specific intent to cause serious bodily injury using a list of factors for determining specific intent set forth in *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978).[7]

---

sufficiency of the evidence following his bench trial conviction of aggravated assault, whereas the trial court in *Patrick* dismissed the defendant's aggravated assault charge upon a pre-trial *habeas corpus* motion. *Id.* In addition to this procedural difference, we distinguish the instant case from *Patrick* because Price was not sucker punched by Burton nor was he caught defenseless or off guard by the blow. *See* n. 4 *supra.*

**6.** *See, e.g., Commonwealth v. Davis,* 267 Pa.Super. 370, 406 A.2d 1087 (1979) (appellant found to have acted recklessly where he

punched his girlfriend once in the face, chased her out of the house, broke the windshield of a car she had fled into, and then beat her again).

**7.** In its written opinion, the trial court stated that this Court has "repeatedly acknowledged that an actor may intend to cause 'serious bodily injury' with only a single punch." Trial Court Opinion, 7/25/08, at 4. However, the principal case the trial court cited in support of this proposition, *Commonwealth v. Dailey,* 828 A.2d 356 (Pa.Super.2003), did not involve a single punch. In *Dailey,* the appellant

Trial Court Opinion, 7/25/08, at 5–8. In *Alexander*, our Supreme Court ruled that a single punch, without more, does not establish that an appellant acted with malice. *Id.* at 194, 383 A.2d at 889. The Supreme Court listed various factors to be considered in deciding whether malice exists, including: the relative sizes of the appellant and the victim; whether the appellant had to be restrained from escalating his attack upon the victim; whether the appellant had weapons or implements to aid his attack; and whether the appellant made any statements before, during or after the attack to indicate his intent to inflict further injury upon the victim. *Id.*

The Majority concludes that because two of these factors were present in this case (Burton's disproportionate size and his threatening statements), this established Burton's intent to cause serious bodily injury to Price. With respect to size of Burton and Price, Price testified at trial that he was 5′5½″ and weighed approximately 162 pounds on the date of the incident. N.T., 4/10/08, at 10. Burton's physical characteristics on the date of the fight were neither established at trial nor

entered into the record. The trial court did ask him to stand up and apparently determined by looking at him that Burton appeared to be over 6′0″ tall, to weigh over 200 pounds, and to be significantly larger and more muscular than Price. Trial Court Opinion, 7/25/08, at 5.

In this regard, the facts here do not differ significantly from those presented in *Roche*. There the defendant was found to be twice as large as and much stronger than the victim. The defendant was also acting belligerently, challenging his victim to arm wrestle and then asking if he was "a tough guy" before striking him. This Court found, however, that while it was indisputable that the victim suffered serious bodily injury from the single blow delivered by the defendant, the attendant facts and circumstances (including the defendant's size and strength) did not suggest that the blow was delivered with the specific intent of inflicting serious bodily injury, or with a reckless disregard for human life. *Roche*, 783 A.2d at 770. As such, the proportionate size of the participants in the fight is not, without more, dispositive on the issue of malice.[8]

---

punched his victim at least twice in the face with a closed fist and would have inflicted more if he had not been subdued by others. *Id.* at 360–61. This Court has previously found that multiple blows to the head may constitute recklessness under section 2701(a)(1). *See Commonwealth v. Faulk*, 928 A.2d 1061 (Pa.Super.2007); *Bruce*, 916 A.2d at 662.

Moreover, the cases cited in *Dailey* are inapposite to the case at bar because they all involved prosecutions under section 2702(a)(3), which provides that "attempts to cause or intentionally or knowingly causes bodily injury" to, *inter alia*, police officers constitute aggravated assault. *See Commonwealth v. Biagini*, 540 Pa. 22, 655 A.2d 492 (1995); *Commonwealth v. Petaccio*, 764 A.2d 582 (Pa.Super.2000), *Commonwealth v. Marti*, 779 A.2d 1177 (Pa.Super.2001). Because subsection (a)(3) refers merely to "bodily injury," rather than to "serious bodily injury" as

in subsection (a)(1), *O'Hanlon's* heightened degree of recklessness required for a conviction under subsection (a)(1) is not required for a conviction under subsection (a)(3).

8. Although the Commonwealth now characterizes Burton's punch as a "bone-shattering, knockout blow to the head," Appellee's Brief at 2, it introduced no medical or expert testimony at trial to substantiate this claim. Instead, it merely introduced Price's medical records and a stipulation summarizing his injuries.

Similarly, in its written opinion the trial court speculates that when a "significantly weaker victim" receives a blow to the head, there is an "elevated probability the victim will be rendered unconscious or temporarily incapacitated ('dazed') due to deficient physical stature." Trial Court Opinion, 7/25/08, at 6. Again, however, there is simply no evidence

With regard to Burton's statements in connection with the fight, the Majority misapplies this *Alexander* factor. Ignoring the actual language of the Supreme Court's decision in *Alexander*, the Majority contends that Burton's "I got you" statement confirms the existence of this *Alexander* factor because it demonstrates that Burton "intended to inflict the victim's injuries." Majority Opinion at 603. Of course, as indicated in the text hereinabove, the fourth *Alexander* is whether the appellant made any statements before, during or after the attack that "indicate his intent to inflict *further injury* upon the victim." *Alexander*, 477 Pa. at 194, 383 A.2d at 889 (emphasis added). Burton's "I got you" statement does not reflect any intent to inflict any *further injury* on Price. To the contrary, there is no evidence in the record on appeal that Burton took any action after the initial punch to inflict any further injury on Price or made any statements indicating an intent to inflict further injury on Price. As is our obligation, we should apply the factors set forth in the Supreme Court's decision in *Alexander* as written, rather than as modified to fit the facts of a different case.

Importantly, in my view the factors set forth in *Alexander* were not intended to provide a quantitative test to determine whether malice exists in these cases. Instead, they are merely useful guides to assist in determining whether the heightened degree of recklessness required for aggravated assault under subsection 2702(a)(1) exists. Regardless of whether any or all of the *Alexander* factors exists in a particular case, the standards more recently elucidated by the Supreme Court in *O'Hanlon* must ultimately direct the analysis. The offensive act must occur

under circumstances in which life-threatening injury or death is essentially certain to occur, and where the defendant could reasonably expect that serious bodily injury or death would be the "likely and logical consequences of his actions." *O'Hanlon*, 539 Pa. at 482–83, 653 A.2d at 618.

In determining whether the Commonwealth proves that an appellant had the requisite intent, a fact-finder is free to conclude that "the accused intended the natural and probable consequences of his actions to result therefrom." *Faulk*, 928 A.2d at 1070 (citation omitted). While Price's injuries were horrific, I cannot conclude that they were "natural and probable consequences" of a single punch from Burton in a perfunctory street fight. Accordingly, I would rule that the trial court erred in finding that the evidence was sufficient to support a conviction of aggravated assault, and dissent from the Majority's conclusion to the contrary.

of record (including but not limited to medical expert testimony) to support such a finding.