J. S25004/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOVAN BROWN, | : | No. 345 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, November 19, 2014,
in the Court of Common Pleas of Clearfield County
Criminal Division at No. CP-17-CR-0001007-2013

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 07, 2016**

Jovan Brown appeals from the November 19, 2014 judgment of sentence following his convictions of aggravated assault, simple assault, recklessly endangering another person ("REAP"), and disorderly conduct.[1] We affirm.

This case stems from an incident that took place at an off-campus college party at a house not far from Penn State-DuBois.  Isaac Peterson, the victim, was involved in two altercations--one with Justin Ritzie and the other with appellant.  The record indicates that the victim and appellant had a previous interaction in which the victim asked appellant to leave the

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701 (a)(1) and (3), 2705, and 5503(a)(1), respectively.

victim's residence because the victim "did not want [any] problems."[2] (Notes of testimony, 9/24/14 at 8.) Upon appellant's arrival at the party, the victim said to appellant, "I heard you're looking for me, . . . everything good, any problems." (*Id.*) Appellant responded, "No, sir, no problems, everything's fine." (*Id.*)

Later in the evening, the victim was on the porch having a discussion with Mr. Ritzie and Kelsey Gulvas, a friend of the victim's. (*Id.* at 9.) Eventually, the victim started talking to a woman standing behind him, and at that point, Mr. Ritzie punched him in the right side of his face.[3] (*Id.*) After the initial hit from Mr. Ritzie, the victim claims to have "blacked out." (*Id.*) The victim did not testify regarding the altercation involving appellant.

Mr. Gulvas testified that he left the party for approximately five to ten minutes, and that upon his return, the victim was lying in the yard with his pants and underwear around his ankles. (*Id.* at 28.) The victim was disoriented, had blood coming out of his ears, and his eyes were bloodshot. (*Id.*) Mr. Gulvas and another person attending the party ("the unidentified male")[4] assisted the victim to his feet, and at that point, appellant punched

---

[2] The previous interaction allegedly originated from an incident in which one of appellant's friends was physically assaulting his girlfriend. (Notes of testimony, 9/24/14 at 8.)

[3] Mr. Ritzie pled guilty to one count of simple assault.

[4] Mr. Gulvas was unable to identify the other person who assisted the victim at the party--he only knew that the other person was a basketball player.

the victim in the right side of his head with a closed fist. (*Id.* at 29.) Mr. Gulvas and the unidentified male tried to get the victim back on his feet again, and appellant said, "I was looking for you," to the victim and hit him again in the right side of the head with a closed fist. (*Id.* at 29-30.) After the second punch from appellant, Mr. Gulvas testified that the victim was unconscious. (*Id.*) He also testified that after the second punch, appellant said that "Ritzie was one of my small boys, that was one of my small boys." (*Id.*) Again, Mr. Gulvas and the unidentified male attempted to get the victim on his feet, and appellant punched the victim on the right side of the head with a closed fist. (*Id.* at 30-31.) At that point, Mr. Gulvas and the unidentified male took appellant to a mutual friend's residence. (*Id.* at 31.)

The victim did not seek medical attention for his injuries until the following day when his father took him to the emergency room at the DuBois Hospital. (*Id.* at 12.) The victim suffered from blurred vision that lasted several weeks, and a strained shoulder that was still providing the victim with discomfort at the time of the trial, approximately 11 months after the incident. (*Id.* at 12-13.) The victim's injuries included swelling of the eyes and nose, scarring on his ears and nose, and his nose was bleeding. (*Id.* at 14.)

---

The other person was identified as "the basketball player" at trial. (*Id.* at 29.)

The Commonwealth charged appellant with the aforementioned crimes on November 25, 2013. Additionally, the Commonwealth charged appellant with harassment.[5] Following a bench trial on September 24, 2014, the trial court acquitted appellant of harassment and convicted on all remaining charges. On November 19, 2014, the trial court sentenced appellant to an aggregate sentence of 22-60 months' imprisonment. Appellant filed a motion for judgment of acquittal as it related to the aggravated assault conviction on December 1, 2014, which the trial court denied on January 26, 2015.[6]

On February 11, 2015, appellant filed a notice of appeal. The trial court, on February 26, 2015, ordered appellant to file a concise statement of errors complained of on appeal within 21 days. On June 5, 2015, the Commonwealth filed a motion to quash the appeal with this court on the grounds that appellant failed to file a Rule 1925 statement as ordered. We denied the Commonwealth's motion to quash on July 21, 2015, while simultaneously remanding the case for appellant to file a Rule 1925 statement *nunc pro tunc*. On October 5, 2015, appellant filed a concise statement of errors complained of on appeal. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on October 28, 2015.

---

[5] 18 Pa.C.S.A. § 2709.

[6] November 29, 2014, was a Saturday. Therefore, appellant's filing deadline was extended to the next business day, which was December 1, 2014. *See* 1 Pa.C.S.A. § 1908.

Appellant raises the following issues for our review:

I.    Whether the Lower Court erred when, on September 24, 2014, it found the Appellant guilty on the charge of Aggravated Assault, a felony of the first degree, following a bench trial despite a lack of sufficiency [sic] of the evidence presented by the Commonwealth[?]

II.   Whether the Lower Court erred when, on September 24, 2014, it found the Appellant was guilty of four counts of Simple Assault and one count of Recklessly Endangering Another Person following a bench trial despite a lack of sufficiency [sic] of the evidence presented by the Commonwealth[?]

III.  Whether the sentence imposed by the Lower Court by order dated November 18, 2014 was manifestly excessive and failed to take into account mitigating factors[?]

IV.   Whether the Appellant's trial attorney, James Walsh, Esquire, was ineffective to the level that it undermined the truth-determining process that no reliable adjudication of guilt or innocence could take place, and whether said representation violated the Appellant's rights under the Constitutions of the Commonwealth and of the United States[?]

Appellant's brief at 6.

Appellant's first two issues relate to the sufficiency of the evidence presented by the Commonwealth.

In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact-finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is

circumstantial rather than direct so long as the combination of the evidence links the accused to a crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

Moreover, when reviewing the sufficiency of the evidence, the Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa.Super. 2013), *appeal denied*, 89 A.3d 661 (Pa. 2014) (citations omitted).

Moreover, when applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa.Super. 2011) (citations omitted), *appeal dismissed*, 54 A.3d 22 (Pa. 2012).

We first review appellant's aggravated assault conviction. The statute defines aggravated assault as when a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Our

supreme court has further defined aggravated assault as "the functional equivalent of murder in which, for some reason, death fails to occur." ***Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 (Pa. 1995).

The Commonwealth avers that we are governed by two previous decisions of this court: ***Commonwealth v. Burton***, 2 A.3d 598 (Pa.Super. 2010) (***en banc***), ***appeal denied***, 32 A.3d 1275 (Pa. 2011), and ***Commonwealth v. Patrick***, 933 A.2d 1043 (Pa.Super. 2007) (***en banc***), ***appeal denied***, 940 A.2d 364 (Pa. 2007). In ***Burton***, the victim, William Price, Jr., sustained significant permanent injuries following a single punch from Mr. Burton. ***Burton***, 2 A.3d at 599. The ***Burton*** court found that the Commonwealth presented sufficient evidence to warrant an aggravated assault conviction. Specifically, the court stated that Mr. Burton intended to cause serious bodily injury to Mr. Price,[7] based in part on Mr. Burton's "gleeful remarks upon viewing [Mr. Price]" unconscious with "his eyes [] rolled back into his head, blood [] coming from his nose, his head [was] bloody, and he was involuntarily twitching." ***Id.*** at 603. The court further found that Mr. Burton's "gloating remarks" "clearly confirmed his desire to severely hurt Mr. Price, regardless of whether those statements

---

[7] Mr. Price sustained the following injuries: "subdural hemorrhage, subarachnoid hemorrhage to the right temporal lobe, a basal skull fracture, a left occipital depressed skull fracture, an intraparenchimal hemorrhage, bilateral inferior frontal lobel, dens fracture on C-2, and spinous fracture of T-4." ***Id.*** at 600. Mr. Price required "aggressive physical and occupational therapy" and also lost his senses of taste and smell. ***Id.***

established that he wanted to continue the attack." *Id.* at 604. As a result, the court determined that Mr. Burton acted with the "requisite *mens rea* to sustain a conviction for aggravated assault." *Id.*

The victim in *Patrick*, Mark Shutkufski, left the line to enter the Front Row bar following an exchange of words with Nicholas Patrick. *Patrick*, 933 A.2d at 1044. Mr. Shutkufski decided to patronize a different bar, and he and a friend walked toward an Irish pub. *Id.* Mr. Shutkufski was walking with his hands in his pockets when Mr. Patrick approached him and punched him in the side of the head. *Id.* The force of the blow caused Mr. Shutkufski to fall to the sidewalk, hitting it head first. *Id.* Mr. Patrick fled the scene immediately after hitting Mr. Shutkufski.[8] *Id.*

Unlike *Burton*, where the court reviewed the sufficiency of the evidence following a bench trial, *Patrick* was a review of the lower court's dismissal of an aggravated assault charge against Mr. Patrick. *Id.* This court found that the above facts satisfied the Commonwealth's burden of establishing a *prima facie* case of aggravated assault at the preliminary hearing. *Id.* at 1047.

A lack of serious injuries sustained by a victim, however, does not necessarily preclude the Commonwealth from charging a defendant with

---

[8] Mr. Shutkufski had to be life-flighted to St. Luke's Hospital in Allentown where he spent approximately two days in a coma as a result of severe trauma to the brain. Thereafter, the victim spent several weeks in therapy. The victim "has not worked since the incident, as he cannot use his right arm or leg well." *Id.* at 1044 n.3.

aggravated assault and being able to present sufficient evidence to warrant a conviction. "Where the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury." *Commonwealth v. Alexander*, 383 A.2d 887, 889 (Pa. 1978); *see also Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012) ("Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury.").[9]

In order to determine intent, the *Alexander* court established four factors to consider upon review. When determining whether a defendant acted with the requisite intent to inflict serious bodily injury, we must consider the following: (1) whether there was a disparity in size and strength between the defendant and the victim; (2) whether the defendant would have escalated the attack had he or she not been otherwise restrained; (3) whether the defendant was in possession of a weapon; and (4) whether the defendant made any statements indicative of his or her intent to "inflict further injury upon the victim." *Alexander*, 383 A.2d at 889; *see also Commonwealth v. Matthew*, 909 A.2d 1254, 1259 (Pa.

---

[9] "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." *Alexander*, 383 A.2d at 889, quoting 18 Pa.C.S.A. § 901(a).

2006) (reaffirming the ***Alexander*** test); ***Commonwealth v. Fortune***, 68 A.3d 980, 986 (Pa.Super. 2013) (***en banc***), ***appeal denied***, 78 A.3d 1089 (Pa. 2013) (same).

In order to determine whether the Commonwealth presented sufficient evidence to warrant a conviction of aggravated assault, we must first determine if the victim suffered serious bodily injury. Should we find that there is an absence of serious bodily injury, we must then determine whether appellant intended to inflict serious bodily injury upon the victim.

Here, the victim did not suffer injuries that constitute the "serious injuries" contemplated by Section 2301. The victim suffered from blurred vision that lasted several weeks, and a strained shoulder that was still providing the victim with discomfort at the time of the trial, approximately 11 months after the incident in question. (Notes of testimony, 9/24/14 at 12-13.) Appellant's visible injuries included swelling of the eyes and nose, scarring on his ears and nose, and his nose was bleeding. (***Id.*** at 14.) None of these injuries rise to the level of injuries enumerated by the statute, which requires "serious or permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Unlike the victims in ***Burton*** and ***Patrick***, the victim in the instant case also did not suffer any life-threatening injuries. Therefore, we must determine whether appellant acted with the requisite intent to inflict serious bodily injury upon the victim.

In order to determine whether appellant acted with the intent to inflict serious bodily injury upon the victim, we shall consider the four factors established by the *Alexander* court. First, we note that the record is silent as to whether there was a significant disparity in **size** between the victim and appellant. There was, however, a significant disparity in **strength** between the victim and appellant, given the victim's state of near unconsciousness as a result of his altercation with Mr. Ritzie. For the second *Alexander* factor, the record reflects that appellant escalated the attack because unlike the defendants in *Burton* and *Patrick*, who threw only one punch, appellant threw three punches to the victim's head while he was nearly unconscious. The third *Alexander* factor is inapplicable in this case as the record does not indicate that appellant had a weapon in his possession. Finally, under the fourth *Alexander* factor, appellant's statements to the victim: "I've been looking for you" and "Ritzie was one of my small boys," indicate an intent to inflict further injury upon the victim.

After considering the four factors established by the *Alexander* court, we, therefore, find that the Commonwealth presented sufficient evidence to support appellant's conviction of aggravated assault.

Under his second issue on appeal, appellant challenges the sufficiency of the evidence relating to his convictions of four counts of simple assault and one count of REAP. Throughout his argument, appellant raises the credibility of the Commonwealth's three witnesses: the victim, Mr. Gulvas,

and Officer Randall Young of the DuBois City Police Department. (**See** appellant's brief at 17-18.) Such an argument challenges the **weight** of the evidence presented, not its **sufficiency**. **Commonwealth v. Gibbs**, 981 A.2d 274, 281-282 (Pa.Super. 2009), **appeal denied**, 3 A.3d 670 (Pa. 2010).

As this court has previously explained,

> The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence and to assess the credibility of the witnesses. **Commonwealth v. Johnson**, 668 A.2d 97, 101 (Pa. 1995). . . . An appellate court cannot substitute its judgment for that of the [finder of fact] on issues of credibility. **Commonwealth v. DeJesus**, 860 A.2d 102, 107 (Pa. 2004).

**Commonwealth v. Palo**, 24 A.3d 1050, 1055 (Pa.Super. 2011), **appeal denied**, 34 A.3d 828 (Pa. 2011); **see also Commonwealth v. Griffin**, 65 A.3d 932, 939 (Pa.Super. 2013), **appeal denied**, 76 A.3d 538 (Pa. 2013). As noted by the **Palo** court, we cannot substitute the fact-finder's judgment of credibility with our own. Therefore, because appellant requests that we reassess witness credibility, no relief is due for appellant's claim that the evidence was insufficient to warrant convictions for four counts of simple assault and one count of REAP.

In his third issue for our review, appellant requests that we review his sentence imposed by the trial court.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n

abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 169-170 (Pa.Super. 2010)

(citation omitted).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the

> Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted).

Here, we begin our analysis by determining whether appellant has complied with the procedural requirements of challenging his sentence. First, appellant timely filed his notice of appeal pursuant to Pa.R.A.P. 902 and 903. Appellant, however, did not file a post-sentence motion asking the trial court to reconsider his sentence pursuant to Pa.R.Crim.P. 720, nor was the issue preserved at sentencing. Accordingly, the issue has not been properly preserved, and we do not have the jurisdiction to review appellant's claim on its merits.

In his fourth and final issue, appellant avers that his trial counsel was ineffective. Our supreme court has held that, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). The court further held,

> *Grant*'s general rule of deferral to PCRA[10] review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel; we disapprove of expansions of the exception to that rule recognized in *Bomar*[11]; and we limit *Bomar*, a case litigated in the trial court before *Grant* was decided and at a time when new counsel entering a case upon post-verdict motions was required to raise ineffectiveness claims at the

---

[10] Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

[11] *Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003).

> first opportunity, to its pre-**Grant** facts. We recognize two exceptions, however, both falling within the discretion of the trial judge. First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims. []
>
> Second . . . where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Commonwealth v. Stollar*, 84 A.3d 635, 652 (Pa. 2014), *cert. denied*, ___ U.S. ___, 134 S.Ct. 1798 (2014), quoting *Commonwealth v. Holmes*, 79 A.3d 562, 563-564 (Pa. 2013).

In the instant appeal, the record does not indicate that appellant has knowingly and expressly waived his collateral review rights. Therefore, we dismiss appellant's claim as it relates to the ineffective assistance of trial counsel without prejudice for him to raise it on collateral review.

Judgment of sentence affirmed.

Mundy, J. joins the Memorandum.

Jenkins, J. concurs in the result.

J. S25004/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2016