**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES COTTLE | |
| Appellant | No. 3475 EDA 2015 |

Appeal from the Judgment of Sentence  October 21, 2015
In the Court of Common Pleas of Delaware County
Criminal Division, at No(s): CP-23-CR-0006306-2014

BEFORE:  PANELLA, J., and OLSON, J., STEVENS, P.J.E.,*

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 04, 2016**

James Cottle ("Appellant") appeals from the judgment of sentence imposed after he was convicted of aggravated assault.[1] We affirm.

The trial court summarized the pertinent facts as follows.

On July 23, 2014, the victim, Joseph Hans, took the Market-Frankford Line SEPTA bus home from work. Mr. Hans worked a night shift. He was sitting in the front of the bus at about 4:30 a.m. when he heard some "commotion" coming from the back of the bus. **See** N.T. 8/14/15 [at] 6-18. [Appellant] was in the rear of the bus arguing with two women. The argument went on for about ten minutes and during its course [Appellant] used profanity and threatened to punch the women. **See id**. at 8-15. Mr. Hans spoke to a fellow passenger at the front of the bus and said, "He ain't going to hit a lady.  . . I'll knock him out.["] **Id**. at 11, 27. [Appellant] told Mr. Hans that he had heard him and asked him where he "got off" the bus. Mr. Hans

_____

[1] 18 Pa.C.S.A. § 2702(a).

*Former Justice specially assigned to the Superior Court.

replied, "69th Street" and [Appellant] said, "I got you." *Id.* at 11-12. The conversation took about ten seconds. Mr. Hans did not engage in further conversation with [Appellant] and he never threatened him. [Appellant] returned to harassing the women.

The women left the bus at 52nd Street. The bus continued on to the 69th Street Terminal and Mr. Hans rose from his seat to exit. He carried a cup of coffee in his left hand and headed toward the rear of the bus to exit. *Id*. at 19-21. [Appellant] was still in his seat. After alighting, Mr. Hans walked toward the front of the bus. [Appellant] rose from his seat and followed Mr. Hans off the bus. He continued to follow him on the sidewalk and then came up behind Mr. Hans and "sucker punched" him from the rear. [Appellant] struck Mr. Hans's jaw and knocked him unconscious. *Id*. at 20-25. Mr. Hans never saw [Appellant] coming. He went down, hitting his head on the curb and "split [his] skull wide open." *See id*. at 20-23. The assault was captured on video tape. It was viewed by the trial court and admitted into evidence at trial. Exhibit C-1. After Mr. Han[s] fell to the pavement unconscious, [Appellant] ran. He was arrested eight days later after he was identified in a photo array. N.T. 8/20/15 [at] 7.

Mr. Hans suffered serious bodily injury. Detective Edward Silverstein responded to the scene but found only a pool of blood and Mr. Hans's possessions because Mr. Hans had been transported to the University of Pennsylvania Hospital Trauma Center. [*Id*. at] 4-5. Eighteen hours later he woke up with thirty-two staples in his head, a concussion and fractures through his jaw line. N.T. 8/14/15 [at] 23. He suffered from Vertigo, was out of work for two weeks[,] and thirteen months later, at the time of trial, he was still experiencing residual headaches. *Id*. at 23-26.

[Appellant] testified at trial. He stated that during their brief interaction on the bus Mr. Hans told him that he "was going to get laid the 'f' out if he hit [the women]." N.T. 8/20/15 [at] 17. He claimed that Mr. Hans gave him a "dirty look" as Hans left the bus and that he felt threatened. On cross-examination [Appellant] admitted that he prepared for a fight. He took his jacket off before he left the bus and as Mr. Hans walked away from the bus and away from [Appellant] he chased him down. Mr. Hans never turned around and never threatened or confronted [Appellant]. *Id*. at 17-24.

Trial Court Opinion, 12/15/15, at 4-5.

At the conclusion of a bench trial, the trial court, in rendering its guilty verdict, credited the testimony of Mr. Hans, while finding Appellant's testimony "totally incredible." N.T., 8/20/15, at 36. The court further expressed its belief that Appellant not only intended to assault Mr. Hans, but that it was a premeditated attack. The trial court stated:

> This is something that didn't arise out of the course of a - – the heat of an instance. This was premeditated. [Appellant] had sufficient time to understand what was about to take place. What the video shows and what the victim testified are one and the same; that he [the victim] was leaving the bus and he has a cup of coffee or some type of liquid. He's obviously not expecting to have a fight in this particular instance. [Appellant] comes up behind him and it's a sucker punch clearly. It's thrown with enough force to not only knock [Mr. Hans] off his feet [but also to] break his jaw when he's thrown to the ground. This could have easily resulted in a murder case if he had struck his head in a different fashion. [Mr. Hans] did in fact sustain serious bodily injury in this particular case.

*Id*. at 36-37.

The trial court sentenced Appellant to a term of four to eight years of imprisonment, and a consecutive three-year probationary term. This timely appeal follows.

Appellant raises the following issue: "Did the [t]rial [c]ourt err in convicting [Appellant] of the offense of Aggravated Assault because the Commonwealth failed to prove beyond a reasonable doubt that he possessed the requisite intent at the time of the encounter?" Appellant's Brief at 5.

Our standard of review is well settled.

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as bodily injury "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member organ." 18 Pa.C.S.A. § 2301.

When, as here, a victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent. *See **Commonwealth v. Patrick***, 933 A.2d 1043, 1046 (Pa. Super. 2007) (*en banc*). Instead, the Commonwealth need only prove that the defendant acted with malice, which is defined as acting recklessly under circumstances manifesting an extreme indifference to the value of human life. ***See id***. To rise to the level of malice, an offensive act must be performed under circumstances that "almost assure that injury or death will ensue." ***Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 (Pa. 1995).

Here, in rejecting Appellant's sufficiency challenge, the trial court likened the facts before it to a more recent *en banc* decision from this Court, and similarly concluded that Appellant's actions in this case demonstrated malice.

> In ***Commonwealth v. Burton***, 2 A.3d 598 (Pa. Super. 2010) [(*en banc*)] the Superior Court considered "whether the delivery of a single punch is sufficient to sustain a conviction for aggravated assault.["] ***Id***. at 601. As in this case, the victim in ***Burton*** suffered serious bodily injury. The Superior Court looked to the surrounding circumstances to determine whether "[Burton] intentionally or knowingly caused [serious bodily harm] ***or*** if he proceeded in such a manner that manifested an extreme indifference to the value of [the victim's] life. ***Id***. at 603. The surrounding circumstances included a disparity in weight between [Burton] and the victim, [Burton's] celebratory behavior after the fact while the victim lay unconscious, the fact that [Burton] prepared to fight and hit the victim when the victim had his hands behind his back and was unprepared for the blow. Similarly, in this case [Appellant] delivered a blow to the head, a vital body part, with such force that he fractured Mr. Hans's jaw and knocked him to the ground, splitting his head open. The blow was unprovoked and unexpected. Mr. Hans was

- 5 -

walking away from [Appellant] holding a cup of coffee in his hand. He was in a vulnerable position and defenseless under the circumstances. [Appellant's] behavior leading up to the assault demonstrated his intent to engage in a fight and the means he employed, a "sucker punch" to the head from behind[,] manifested an extreme indifference to the value of Mr. Hans's life. Afterward, when Mr. Hans lay bleeding and unconscious on the pavement, [Appellant] ran. **See also Commonwealth v. Patrick**, 933 A.2d 1043 (Pa. Super 2007) (reckless indifference to human life was substantiated where defendant caused serious bodily injury with a single punch to the side of the unsuspecting victim's head, causing the victim to fall "without reflexive protection"); **Commonwealth v. Bruce**, [916 A.2d 657 (Pa. Super. 2007) (the manner of the attack may reflect intent to inflict serious bodily harm[)].

Trial Court Opinion, 12/15/15, at 6-7. Our review of the record amply supports the trial court's conclusion that the Commonwealth presented sufficient evidence to convict Appellant of aggravated assault.

Appellant's claims to the contrary are unavailing. Initially, we note that, in making his arguments, Appellant does not acknowledge this Court's holdings in **Burton** and **Patrick**. Instead, he cites to two significantly older cases, neither of which involved the "single punch" scenario. **See** Appellant's Brief at 13-14 (citing **Commonwealth v. Magnelli**, 502 A.2d 241 (Pa. Super. 1985), and **Commonwealth v. Rockwell**, 340 A.2d 553 (Pa. Super. 1975)). Both cases are plainly inapposite.

Appellant also refers to his trial testimony that he believed he was about to be attacked. Although he acknowledges that the trial court found this testimony unworthy of belief, he refers to subsequent testimony and medical evaluations regarding his mental health presented at the time of

sentencing to challenge the trial court's credibility determination. According to Appellant, the trial court's finding as to his credibility "leaves unaddressed his medical history and psychological assessment which lend credence to his [trial] testimony and cast grave doubt that he could have possessed the requisite intent to commit the crime of Aggravated Assault." Appellant's Brief at 15.

Appellant cites no case law that permits the trial court to disturb its credibility determinations based up on trial testimony with information gained subsequent to Appellant's convictions. Thus, we do not consider this claim further. **See Commonwealth v. Tielsch**, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal).

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2016