J. S42038/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
GARY L. COLEMAN, : No. 69 MDA 2017
:
Appellant :


Appeal from the Judgment of Sentence, December 9, 2016,
in the Court of Common Pleas of Lycoming County
Criminal Division at No. CP-41-CR-0001183-2015


BEFORE:  OLSON, J., MOULTON, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 01, 2017**

Gary L. Coleman appeals from the December 9, 2016 judgment of sentence entered in the Court of Common Pleas of Lycoming County following his conviction in a jury trial of 1 count each of aggravated assault -- attempt, aggravated assault, possessing instruments of crime, and disorderly conduct, and 2 counts of simple assault.[1]  The trial court imposed an aggregate sentence of 80 to 120 months of imprisonment.  We affirm.

The trial court set forth the following factual history, as gleaned from the trial transcript:

> The two victims in this case, Jason Allen ("Allen"),
> and Jordan Anderson Royal, went to Anne's Tavern
> with Christopher Allen and Joshua King around
> 11 p.m. on July 4, 2015.    Jason Allen and

---

[1] 18 Pa.C.S.A. §§ 2702(a)(4), 2702(a)(1), 907(a), 5503(a)(1), and 2701(a)(1), respectively.

Joshua King are brothers, Christopher Allen is their cousin, and Jordan Anderson Royal is their friend. At Anne's Tavern, Jason Allen played pool. While playing pool, Jason Allen greeted Angela Di[M]arco, an acquaintance from school, who he grew up with and with whom he was friendly. Angela Di[M]arco is [appellant's] fiancé[e] and mother of [appellant's] two young children. [Appellant] observed Jason Allen speaking to Di[M]arco and concluded that Allen said something that Di[M]arco did not like. [Appellant] and Allen talked with each other about what Allen may have said to Di[M]arco. While body language signaled discord between [appellant] and Allen, they did not yell or argue. The conversation ended and Allen resumed playing pool.

As Allen was taking a shot at pool, [appellant] calmly walked around him and smashed a glass beer mug over Allen's head with such force that it broke into pieces. [Allen] was lining up the cue ball to take his next shot when he heard and felt glass breaking over him. [Appellant] then pushed Allen into a corner, swinging at him, kicking him, striking him with pool sticks and chairs on Allen's face, back and stomach area. Multiple people blocked assistance to Allen and other people joined in striking Allen. After the altercation, Allen was the only individual observed bleeding. [Appellant] was seen striking Allen more than five times. As [appellant] was leaving Ann[e]'s Tavern, [appellant] struck Jordan Anderson Royal [on] the right side of his body. After [appellant] struck Royal, Royal fell to the ground. Once on the ground, [appellant] and others kicked and stomped on Royal's right side of his torso.

Allen lost a lot of blood and required about 30-40 stitches. Prior to stitching his wounds, medical staff pulled out pieces of glass from Allen. Medical records indicate that Allen suffered "a minor closed head injury, no concussion, multiple deep lacerations to the right . . . periorbital area and the right cheek area," and noted a "foreign body present, complicated repair." Medical staff advised

Allen that he may have "a few small pieces of glass left behind." In his testimony, Allen rated his pain level as a 9 on a scale of 1 to 10, with 10 being "the most extreme amount of pain[,]" lasting for about three to four days after the assault. Allen suffered scarring on his side and back from the pool stick or chairs. Allen suffered swelling to the face and mouth area of the jaw and inside his lip. Allen suffered permanent scarring on his face and body. Allen was off work for two weeks. Allen endured eye twitching for a period of about four to six months and double vision of the right eye for a couple of months. Allen increased visits to the chiropractor. As a result of his injuries, Allen stopped playing semi-pro football for a couple of weeks and now uses a special padded helmet when playing football.

Trial court opinion, 4/5/17 at 3-5 (citations to notes of testimony omitted; one set of brackets in original).

The record reflects that appellant did not file post-sentence motions, but filed a timely notice of appeal.[2] The trial court then entered an order directing appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a motion for extension of time in which to file his Rule 1925(b) statement and reserved the right to supplement his statement following receipt of transcripts. The trial court granted appellant's motion, and appellant filed a timely supplemental

---

[2] Although the 30th day following imposition of sentence was Sunday, January 8, 2017, appellant timely filed his notice of appeal on Monday, January 9, 2017. *See* 1 Pa.C.S.A. § 1908, incorporated by reference into the Rules of Appellate Procedure, Pa.R.A.P. 107 (omitting Saturdays, Sundays, and legal holidays from time computation).

Rule 1925(b) statement following receipt of transcripts. Thereafter, the trial court filed its Rule 1925(a) opinion.

Appellant raises the following issues for our review:

[1.] Whether the trial court erred by allowing the admission of exhibits 12, 13, 14, 17, and 19 despite their misleading and unduly prejudicial nature?

[2.] Whether the verdict as to the charge of Aggravated Assault, 18 Pa.C.S.[A.] § 2702(a)(1), is supported by sufficient evidence regarding [appellant's] intent to cause serious bodily injury given that he refrained from using available implements, such as shards of glass, that certainly would have caused serious bodily injury?

[3.] Whether the trial court erred in denying [appellant's] Motion for Continuance and Mistrial after the Commonwealth informed the Court that a defense witness, Angela DiMarco, was being investigated for potential witness intimidation charges and, further, should be warned about a potential perjury charge should she choose to testify as planned, thus preventing the defense from presenting the testimony needed to support its theory of the case?

Appellant's brief at 5 (footnote omitted).[3]

Appellant first complains that the trial court abused its discretion when it denied his motion *in limine* to exclude crime-scene photographs from being introduced into evidence at trial.

---

[3] We note that the Commonwealth elected against filing a brief in opposition in this matter. (**See** Commonwealth correspondence to this court, docketed 5/22/17.)

"When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Mitchell***, 902 A.2d 430, 455 (Pa. 2006) (citation omitted). "In general, relevant evidence, *i.e.*, evidence that logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact, is admissible." ***Commonwealth v. Jordan***, 65 A.3d 318, 324 (Pa. 2013), ***cert. denied***, 134 S. Ct. 1275, 188 L. Ed. 2d 311 (2014) (quotation and quotation marks omitted). Although a trial court may find that evidence is relevant, it may nevertheless exclude the evidence if its probative value is outweighed by the likelihood of unfair prejudice. ***Commonwealth v. Reid***, 811 A.2d 530, 550 (Pa. 2002), ***cert. denied***, 540 U.S. 850 (2003) (citation omitted). Accordingly, in exercising its discretion, the trial court must balance the evidentiary value of the evidence against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury. ***Jordan***, 65 A.3d at 325. Additionally, "[t]he admission of photographs is a matter resting with the discretion of the trial court." ***Commonwealth v. Tharp***, 830 A.2d 519, 530 (Pa. 2003). In ***Commonwealth v. Malloy***, 856 A.2d 767 (Pa. 2004), our supreme court outlined a two-part test for the admissibility of photographs.

> First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the

> photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury.

*Id.* at 776.

Here, appellant does not contend that the crime-scene photos were irrelevant or inflammatory. Rather, appellant complains that the photos were misleading because, according to appellant, the blood that was depicted in the crime-scene photographs was not necessarily Allen's blood, and as such, the jury should not have seen those photographs because it "allowed the jury to render a decision on an improper basis" by permitting it to conclude that "given the amount of blood depicted, if all that blood came from Allen, he must have been seriously injured" and appellant "must have committed aggravated assault." (Appellant's brief at 14.) In support of this argument, appellant relies on *Leahy v. McClain*, 732 A.2d 619 (Pa.Super. 1999). In that negligence case, the trial court precluded the introduction into evidence of photographs that failed to accurately depict the accident scene at the time the accident occurred because the photographs were taken on a summer day when the road was dry, and the accident occurred on a winter night during a snowstorm. As such, the trial court precluded admission of these photographs because they would mislead the jury as to the visibility conditions at the time of the accident. *Id.* at 624-625.

Here, appellant maintains that similar to the inadmissible photographs in *Leahy*, the crime-scene photographs introduced into evidence at his trial

were misleading because they permitted the jury to infer that all of the blood depicted in the photographs came from Allen. Appellant's reliance on **Leahy** is gravely misplaced because, unlike **Leahy**, the photographs shown to the jury in appellant's case were crime-scene photos, not photos taken 6 months later under completely different conditions. Moreover, the record reflects that the Commonwealth introduced evidence that Allen was the only person bleeding that night. (Notes of testimony, 10/27/16 at 23-24, 51-52.) We find no abuse of discretion.

Appellant next complains that the evidence was insufficient to convict him of aggravated assault because he lacked the intent to cause serious bodily injury to Allen, as the facts demonstrate that appellant "did not take advantage of every opportunity to seriously injure Allen" because appellant could have used "shards of [a] broken beer mug[,]" "which would have made an excellent weapon." (Appellant's brief at 15-16.)

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of

> proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted).

Under the Crimes Code, a person may be convicted of aggravated assault, a first-degree felony, if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1); *see also Commonwealth v. McClendon*, 874 A.2d 1223, 1229 (Pa.Super. 2005).

In this case, a jury convicted appellant of aggravated assault after finding that he caused Allen to sustain serious bodily injury. "When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." *Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa.Super. 2010). Moreover, the "statute's intent requirement can be met if the defendant acts recklessly under circumstances  manifesting an extreme indifference to human life." *Id.* (citation omitted). "The intent to cause serious bodily injury -- the only element of aggravated assault at issue here -- may be proven by direct or

circumstantial evidence." *Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003) (citation omitted).

Here, no dispute exists that appellant struck Allen on the head with a glass beer mug with such force that it shattered into pieces causing Allen to sustain multiple wounds that each required 30 to 40 sutures to close. The Commonwealth presented eyewitness and videotape evidence of appellant committing the assault. Additionally, appellant testified that he planned to hit Allen with the beer mug and that he also intended to hit "somebody" with a pool stick. (Notes of testimony, 10/27/17 at 124-126.) Eyewitness and videotape evidence revealed that after appellant struck Allen with the beer mug with such force that it shattered into pieces and caused Allen to sustain multiple wounds that required emergency medical intervention, appellant repeatedly struck Allen with a pool stick, inflicting further injury.

Despite this evidence, appellant now complains that that because he could have used shards of glass of the broken beer mug to assault Allen, the fact that he chose not to demonstrates that he lacked the requisite intent to sustain his aggravated assault conviction. Appellant is gravely mistaken. At the very least, the videotape evidence, together with eyewitness testimony and appellant's admission that he struck Allen with a beer mug on the head with such force that it shattered into pieces and that the blow caused Allen to sustain multiple wounds that each required 30 to 40 sutures to close was sufficient to prove intent to cause serious bodily injury because it

demonstrated that appellant acted recklessly with extreme indifference to Allen's life. Therefore, this claim lacks merit.

Appellant finally complains that the trial court abused its discretion when it denied his motion for continuance/mistrial after defense witness Angela DiMarco came under investigation for witness intimidation of three prosecution witnesses, and as a result of that investigation, Ms. DiMarco decided against testifying on appellant's behalf.

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Tucker*, 143 A.3d 955, 961 (Pa.Super. 2016) (citations omitted). The grant of a mistrial is an extreme remedy that is required "only when an incident is of such a nature that its unavoidable effect is to

deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Johnson*, 719 A.2d 778, 787 (Pa.Super. 1998) (*en banc*) (citation omitted).

Here, the record reflects that Ms. DiMarco, appellant's fiancée and the mother of his two children, came under investigation for witness intimidation during appellant's trial. Defense counsel made an oral motion for continuance/mistrial claiming that counsel had planned to call Ms. DiMarco on appellant's behalf and "[n]ot having her available greatly hampers [appellant's] defense." (Notes of testimony, 10/27/16 at 72.) The trial court denied the oral motion for continuance without prejudice and deferred its ruling on the motion for mistrial until Ms. DiMarco decided whether she would testify on appellant's behalf. (*Id.* at 75, 78-79.) Counsel was then appointed to advise Ms. DiMarco as to the legal consequences of her decision to testify. Thereafter, Ms. DiMarco stated on the record that she would not testify and that the decision was of her own free will. (*Id.* at 98.) Defense counsel did not renew the motion for continuance, and the trial court did not declare a mistrial.

Appellant now complains that:

> [h]ad a continuance been granted until Ms. DiMarco's charges had been resolved, she would have been available as a witness and these crucial facts could have come to light. Because she reasonably decided that she would plead the Fifth if she were called to testify, [appellant] was prejudiced in that he was unable to fully present the facts necessary to support his theory of the case.

Appellant's brief at 18-19 (citation to notes of testimony omitted).

Appellant fails to explain, and we cannot fathom, how a defense witness who comes under investigation for witness intimidation and decides against testifying to reduce her exposure to criminal liability constitutes a prejudicial event that deprived appellant of a fair and impartial trial. As the trial court explained:

> A jury would likely view testimony by Di[M]arco as potentially biased. Di[M]arco was [appellant's] fiancé[e] and mother of his small children. [Appellant] should not profit from the alleged misconduct of his fiancé[e].
>
> There was no specific proffer as to what Ms. Di[M]arco's testimony would have been or how it would advance [appellant's] theory of the case. There was no suggestion that [the] circumstances surrounding Ms. Di[M]arco's ability to testify would change within a reasonable time. The Commonwealth asserted that those circumstances would not change. Any testimony by Ms. Di[M]arco would be weighed as having some potential for bias in [appellant's] favor. Given the admissions by [appellant] and the video [evidence], Ms. Di[M]arco's testimony would not go toward whether [appellant] struck Allen with a glass beer mug and attacked Allen but rather would likely have been cumulative evidence as to what transpired verbally between Allen and [appellant]. Since [appellant] did not allege self-defense or defense of others so it is unclear what theory of the case Di[M]arco's testimony could support. The Court believes it was appropriate to deny the continuance/mistrial.

Trial court opinion, 4/5/17 at 10 (citations to notes of testimony omitted).

After hearing and consideration, the learned trial court acted in conformity with the law on the facts and circumstances that came before it with respect to the investigation of Ms. DiMarco and appellant's requested continuance/mistrial. Accordingly, we discern no abuse of discretion.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2017