J-S35005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DEVIN KING | |
| Appellant | No. 991 WDA 2016 |

Appeal from the Judgment of Sentence May 25, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0007915-2015

BEFORE:  LAZARUS, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 11, 2017**

Devin King appeals from his judgment of sentence, entered in the Court of Common Pleas of Allegany County, following his conviction for aggravated assault – serious bodily injury[1], unlawful restraint – serious bodily injury[2], terroristic threats[3], two counts of simple assault[4], and false imprisonment.[5]  Upon review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1).

[2] 18 Pa.C.S.A. § 2902(a)(1).

[3] 18 Pa.C.S.A. § 2706(a)(1).

[4] 18 Pa.C.S.A. § 2701(a)(1).

[5] 18 Pa.C.S.A. § 2903(a).

Margaret Blow testified that on the morning of May 20, 2015, she approached King after seeing that he had messages from other women on his cell phone. At the time, Blow was living with King, although the lease was solely in King's name. The two got into an argument, and eventually, King came into her bedroom from the living room and head-butted her in the mouth. King then grabbed Blow by her hair, dragged her into the dining room, and stepped on her face. King put one hand around her throat, and when Blow started calling to her children for help, he placed one hand down her throat. King started repeatedly screaming at Blow, saying "I'm going to f-ing kill you and make you leave the house today." N.T. Trial, 3/7/2016, at 8. At this point, Blow tried to walk out of the dining room, but King brought her to the floor, wrapped his legs around her stomach, and choked her. When Blow got off of the floor, King threw her against the wall and she hit her head against the wall. Blow then picked up her phone and went to the bathroom, where she video-chatted with her sister-in-law, asking her to call a taxi. King came into the bathroom, keeping the door open but blocking it with his body, and continued screaming at Blow, saying that he was going to kill her. King would not let her leave the bathroom for several minutes, until her brother appeared on the voice chat, and yelled through the phone that he was going over to King's house, causing King to leave the bathroom. Blow then left the house, and went to her sister-in-law's house. Blow testified that the entire incident took 10 or 15 minutes.

After stopping at her sister-in-law's house, Blow went to the McKeesport Hospital to receive medical treatment. There, Blow received two sutures to her upper lip, and was told she might have a sprained wrist. Since Blow's left eye was swollen to the point of being nearly shut, the staff also performed a CAT scan, but found no other damage. Shortly afterwards, Blow contacted the police about the incident. Officer Smith testified that when he spoke to Blow, he noticed that her lip had stitches and that her left eye was swollen.

On March 7, 2016, King was convicted on all counts at a non-jury trial, and on May 25, 2016, he was sentenced to two to five years' incarceration. On June 2, 2016, King filed post-sentence motions challenging the weight of the sentence and a seeking reconsideration of his sentence. These motions were denied on June 9, 2016. On July 16, 2016, King filed a notice of appeal, followed by a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on September 1, 2016. The trial court filed its Rule 1925(a) opinion on October 19, 2016.

King raises the following issues on review:

1. Was the evidence insufficient to sustain the conviction for aggravated assault as no serious bodily injury occurred and Mr. King did not intent to cause such injury?

2. Was the evidence insufficient to sustain the conviction for unlawful restraint as Mr. King did not expose Blow to risk of serious bodily injury?

3. Was the evidence insufficient to sustain the conviction for false imprisonment as Mr. King did not unlawfully restrain Blow so as to substantially interfere with her liberty?

Brief of Appellant, at 4.

King first claims that there was insufficient evidence to support his conviction for aggravated assault. Our standard of review of a challenge to the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001), quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super 2000) (citations and quotation marks omitted).

Aggravated assault is defined, in relevant part, as:

**(a)  *Offense defined.*** — A person is guilty of aggravated assault if he:

- 4 -

> **(1)** attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

18 Pa.C.S.A. § 2702(a)(1) (bold and italics in original). Additionally, the following terms are defined in 18 Pa.C.S.A. § 2301:

> *"Bodily injury."* —Impairment of physical condition or substantial pain.

> *"Serious bodily injury."* —Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

"For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." ***Commonwealth v. Gruff***, 822 A.2d 773, 776 (Pa. Super. 2003). To find intent, we look at the totality of the circumstances to determine whether a defendant possessed the intent to inflict serious bodily harm. ***Commonwealth v. Matthews***, 909 A.2d 1254, 1256 (Pa. 2006). We examine the defendant's words and conduct to determine whether the requisite intent exists. ***Gruff***, 822 A.2d at 779.

In ***Commonwealth v. Burton***, 2 A.3d 598 (Pa. Super. 2010), our Court upheld a conviction of aggravated assault when the defendant, Darryl Burton, caused serious bodily injury to the victim, William Price, Jr., with a single punch. In that case, we were able to determine that Burton possessed the requisite intent because Burton was significantly larger and

stronger than Price, and Burton aggressively initiated a confrontation with Price by demanding that Price pay the money he owes. *Id.* at 603. We also found that, despite an initial aggressive confrontation, the fact that Burton suddenly struck Price while Price was unprepared for an attack was an indicator of Burton's intent to inflict serious bodily harm. *Id.* Additionally, we found that Burton's conduct of smiling and saying, "I got you" while watching Price bleeding on the ground after the attack, was evidence of Burton's intent. *Id.*

Upon review of the record and viewing all evidence in a light most favorable to the Commonwealth, *DiStefano, supra*, we find that, regardless of whether Blow's injuries constitutes serious bodily harm, King possessed the intent to inflict serious bodily harm to Blow, and attempted to do so by continuously attacking her. Blow described King as being taller than her. N.T. Trial 3/7/2016, at 16. Additionally, King entered her room following an argument, and started yelling at her and then head-butted her. This is comparable to *Burton, supra*, as both cases involved a larger attacker suddenly initiating a physical attack. While attacking Blow, King repeatedly yelled that he was going to "f-ing kill her," and continued to yell similar language while Blow was in the bathroom. Like the statements made by Burton, King showed his intention to inflict serious bodily injury with his words and actions. *Id.* at 603; *see also Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003) (stating intent can be found where one verbalizes reasons for his actions). We find the attempt element of aggravated assault

also satisfied by King's unrelenting physical assaults. *Commonwealth v. Rodriguez*, 673 A.2d 962, 966-67 (Pa. Super. 1996). While King argues that the lack of a weapon during the attack, despite the opportunity to get one, was evidence that he had no intent to inflict serious bodily injury, we have never held that a weapon is necessary to find intent to inflict serious bodily injury. Therefore, we find that there was sufficient evidence to support the conviction of aggravated assault.

King next claims that the evidence was insufficient to support his conviction for unlawful restraint. Unlawful restraint is defined as:

> **(a)** *Offense defined.* — Except as provided under subsection (b) or (c), a person commits a misdemeanor of the first degree if he knowingly:
>
> **(1)** restrains another unlawfully in circumstances exposing him to risk of serious bodily injury;

18 Pa.C.S.A § 2902(a)(1) (bold and italics in original).

King's challenge to his unlawful restraint conviction relies on the theory that he did not place the defendant in a situation where she was at risk of serious bodily harm. As we have discussed above, King's continuous attacks on Blow did indeed expose her to the risk of serious bodily harm. Since King prevented Blow from leaving the house at various times during the attack, we find that the evidence supports the conviction of unlawful restraint.

Finally, King claims that there was insufficient evidence to support his conviction of false imprisonment. False imprisonment is defined as:

> **(a)** *Offense defined.* — Except as provided under subsection (b) or (c), a person commits a misdemeanor of the second degree if he knowingly restrains another unlawfully so as to interfere substantially with his liberty.

18 Pa.C.S.A. § 2903. In determining whether the restraint at issue "substantially" interfered with a person's liberty, we must give the word substantially its plain meaning. *See* 1 Pa.C.S.A. § 1903 (words in statute construed according to common and approved usage); *In re M.G.*, 916 A.2d 1179, 1182 (Pa. Super. 2007).

Upon review of the record and viewing all evidence in a light most favorable to the Commonwealth, *DiStefano, supra*, we must determine whether King significantly or considerably deprived Blow of her liberty when he prevented her from leaving the house. We conclude that he did. King argues that he never deprived Blow of her liberty because Blow was never trapped in any room of the home. King additionally claims Blow went into the bathroom of her own volition, and the door to the bathroom was left open during the incident. However, Blow's testimony clearly indicates that King did not allow Blow to leave the bathroom by inserting himself between Blow and the door. Blow testified that she was trapped in the bathroom with King for more than a minute. It was not until Blow's brother communicated to her via video chat that he was coming over that King left the bathroom, enabling Blow to escape. We have previously found a substantial

interference of a victim's liberty when the victim was unable to leave her room for over a minute due to the defendant standing between the victim and her closed door. *M.G.*, 916 A.2d at 1182. Given the similarity between this holding and the facts of this case, we find that King substantially deprived Blow of her liberty.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2017