J. S12036/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| STEVE LEVENGOOD, | : | No. 1365 MDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 23, 2017,
in the Court of Common Pleas of Lebanon County
Criminal Division at No. CP-38-CR-0001566-2016

BEFORE:  LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 03, 2018**

Steve Levengood appeals from the August 23, 2017 aggregate judgment of sentence of 3 to 7 years' imprisonment imposed after a jury found him guilty of aggravated assault and simple assault.[1]  After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts and procedural history of this case as follows:

> On the night of June 27, 2016, after months of a strained and often hostile relationship, [appellant] and his next-door neighbor, Darnell Pemberton (hereinafter "the victim"), stood at their respective property lines engaged in a heated argument. Within minutes of the face to face encounter, [a]ppellant suddenly punched the victim in the jaw. The victim fell backward from the force of the blow and his head impacted against the asphalt driveway

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and 2701(a)(1), respectively.

whereupon he sustained traumatic brain injury. Shortly thereafter, law enforcement and emergency medical personnel responded and the victim was transported to the hospital for treatment.

Appellant was charged with Aggravated Assault and Simple Assault in relation to the above-described incident. After a three day jury trial, [a]ppellant was found guilty on both counts and on August 23, 2017, th[e trial c]ourt sentenced [a]ppellant to a minimum of three years and a maximum of seven years in a state correctional facility, along with fines, restitution and costs of prosecution. At sentencing, counsel for [a]ppellant made an oral motion for bail pending appeal, which th[e trial c]ourt denied. Appellant did not file any other post-sentence motions.

Trial court opinion, 10/13/17 at 1-2 (footnotes omitted).

On August 25, 2017, appellant filed a timely notice of appeal. That same day, the trial court directed appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on September 11, 2017, and the trial court filed its Rule 1925(a) opinion on October 13, 2017. ***See id.***

Appellant raises the following issues for our review:

1. Whether there was sufficient evidence to support the jury's verdict as to aggravated assault as the Commonwealth failed to prove that [a]ppellant's action in punching the victim one time in the face established that [a]ppellant intentionally, knowingly or recklessly caused serious bodily injury?

2. Whether the trial court erred in allowing the Commonwealth to present a slow-motion video of the incident that captured [a]ppellant punching the victim in the face since such evidence did not establish any probative value

as to [a]ppellant's specific intent and only prejudiced [a]ppellant by demonstrating the incident as neither [a]ppellant nor the victim observed the altercation in real time?

Appellant's brief at 6.

We begin by addressing appellant's claim that there is insufficient evidence to sustain his conviction for aggravated assault. In support of this contention, appellant avers that "the Commonwealth failed to prove that [his] action in punching the victim one time in the face established that [he] intentionally, knowingly, or recklessly caused serious bodily injury." (*Id.* at 14.) For the following reasons, we disagree.

Our standard of review in assessing whether there was sufficient evidence to sustain appellant's conviction for aggravated assault is well settled.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009), *appeal denied*, 4 A.3d 1054 (Pa. 2010) (citations omitted).

A person will be found guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). The term "serious bodily injury" is defined by statute as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm . . . the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life." ***Commonwealth v. Burton***, 2 A.3d 598, 602 (Pa.Super. 2010) (***en banc***) (internal citation omitted), ***appeal denied***, 32 A.3d 1275 (Pa. 2011).

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there was sufficient evidence from which the jury could conclude that appellant recklessly caused serious bodily injury to the victim. The Crimes Code defines reckless conduct as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the

> actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A § 302(b)(3).

In **Commonwealth v. Smith**, 956 A.2d 1029 (Pa.Super. 2008), **appeal denied**, 989 A.2d 917 (Pa. 2010), this court recognized that a heightened degree of recklessness, akin to malice in a murder case, is required for aggravated assault convictions:

> To prevail on a theory of recklessness [in an aggravated assault prosecution], the Commonwealth must show an assailant's recklessness rose to the level of malice, a crucial element to sustain a conviction for aggravated assault.
>
> Malice exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; **rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury.** A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.
>
> The circumstances showing intent to cause serious bodily injury apply with equal force to prove recklessness to a degree that one would reasonably anticipate serious bodily injury as a likely and logical result.

*Id.* at 1036-1037 (internal citations omitted; emphasis added).

This court has previously addressed similar situation in *Burton*. In *Burton*, an *en banc* panel of this court was faced with determining whether the Commonwealth presented sufficient evidence to support a conviction for aggravated assault where defendant provoked an altercation with the smaller, older victim and landed a single punch to the victim's head. *Burton*, 2 A.3d at 599-601. The victim in *Burton* sustained serious and permanent injuries to his brain and spine as a result of this assault. *Id.* The *Burton* court found that there was sufficient evidence that defendant intentionally or knowingly proceeded in a manner that manifested an extreme indifference to the value of the victim's life, thus supporting his conviction for aggravated assault. *Id.* at 602-603. The *Burton* court based this decision, in part, on the fact that defendant was much larger and stronger than the victim; that "the victim was caught unaware" by defendant's single blow to his head; and defendant demonstrated an utter lack of remorse or concern for the victim as he lay unconscious in the street by making several "gloating remarks." *Id.* at 603-604.

Similarly, the testimonial and video evidence presented in this matter established that during the course of a verbal argument, appellant blindsided the victim with a punch to the jaw after shining a flashlight "in [his] eyes" "less than an inch from [his] face[,]" ostensibly blinding him. (Notes of testimony, 6/12/17 at 34-35, 40-42; 6/13/17 at 221-222.) As the trial

court recognized in its opinion, "[t]he fact that [a]ppellant was shining a flashlight in the victim's face provides support for the inference that the victim was caught unaware and unprepared for the blow to the head . . . ." (***See*** trial court opinion, 10/13/17 at 9 (citation omitted).) This assault rendered the victim unconscious and caused him to fall back and strike his head on the asphalt driveway. (Notes of testimony, 6/12/17 at 35-36; 6/13/17 at 221-222.)

The Commonwealth introduced video footage at trial that was taken by both appellant's wife (hereinafter, "Levengood Video") and the victim's security camera (hereinafter, "Pemberton Video") depicting this assault. (***See*** notes of testimony, 6/12/17 at 37, 46, 48.) Appellant testified at trial that the Levengood Video depicts him shining a light in the victim's face, hitting him in the face, and then immediately turning around and telling his wife to call 911 "to get the police there." (Notes of testimony, 6/13/17 at 221-222, 246.) Likewise, the record establishes that the Pemberton Video depicts appellant walking toward the victim, initiating a verbal argument, and shining a flashlight very close to the victim's face. (***See*** notes of testimony, 6/12/17 at 39-40.) This video further demonstrates that after the victim admittedly attempted to swat the flashlight out of his face with an open hand, appellant shifted the flashlight to his left hand and immediately struck the victim with his dominant right fist. (***Id.*** at 42, 108; notes of testimony, 6/13/17 at 221, 247-248.)

Additionally, like in **Burton**, the evidence establishes that there was a significant size difference between appellant and the victim in this matter. Lebanon City Police Chief Daniel Wright testified that appellant specifically denied feeling afraid or threatened by the victim and that according to PennDOT information, appellant is 5 inches taller than the victim and, in Chief Wright's estimation, 40 to 50 pounds heavier. (Notes of testimony, 6/13/17 at 155-156.) Appellant, in turn, testified that he is 5-feet, 11-inches tall, weighed approximately 195 pounds at the time of the assault, and admitted that he is significantly larger than the victim. (**Id.** at 249-250.) Appellant also acknowledged that he did not render aid to the victim as he lay unconscious on the driveway because they "were on bad terms" and that "he figured he would have been up by now." (**Id.** at 221-222.) The record further establishes that no ambulance was called to the scene until after Officer Sean McCarrick arrived and determined that the victim was bleeding from his head, was incoherent, and could not speak or walk properly. (**Id.** at 85-90.)

The evidence further establishes that the victim did, in fact, sustain serious bodily injury as a result of this assault. The victim was hospitalized for "almost two weeks" following this assault and had to undergo speech and physical therapy in order to learn how to speak properly and walk again. (Notes of testimony, 6/12/17 at 86-87.) The victim testified that he continues to suffer from severe migraines due to light sensitivity and that

this condition caused him to lose his job. (*Id.* at 88-93.) Dr. Justin Chandler, the victim's supervising physician, testified that the victim remained in the Intensive Care Unit at Milton S. Hershey Medical Center for two days and suffered multiple traumatic brain injuries as a result of this assault, including a subarachnoid hemorrhage and a smaller contusion, or bruising of the brain. (*Id.* at 126-127.) Dr. Chandler opined that appellant's injuries are consistent with the victim's receiving a blow to the head and then falling backwards, striking his head on the asphalt. (*Id.* at 128-129). Dr. Chandler further noted that, in his professional opinion, the victim's injuries constituted a serious bodily injury in that they caused protracted loss or impairment of bodily function. (*Id.* at 136-137).

Based on the foregoing, we find no error on the part of the trial court in concluding that appellant recklessly caused serious bodily injury to the victim under circumstances manifesting extreme indifference to the value of human life. Accordingly, appellant's claim that there was insufficient evidence to sustain his conviction for aggravated assault must fail. ***See***, ***e.g.***, ***Burton***, 2 A.3d at 599.

Appellant next argues that the trial court abused its discretion in allowing the Commonwealth to introduce a slow-motion video of the assault to the jury. (Appellant's brief at 35.) Appellant maintains that the probative value of this video was outweighed by its prejudicial impact in that the video had no bearing as to his intent and only served to distort the events of this

incident "by demonstrating the incident as neither [a]ppellant nor the victim observed the altercation in real time." (**Id.**) We disagree.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Fransen**, 42 A.3d 1100, 1106 (Pa.Super. 2012), **appeal denied**, 76 A.3d 538 (Pa. 2013) (citation omitted). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." **Commonwealth v. Antidormi**, 84 A.3d 736, 745 (Pa.Super. 2014), **appeal denied**, 95 A.3d 275 (Pa. 2014) (citation omitted).

This court has long recognized that,

> [t]he threshold inquiry with admission of evidence is whether the evidence is relevant. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

**Id.** at 750 (citations and internal quotation marks omitted).

"With respect to the admissibility of slow motion video into evidence, [our supreme court] has held that such representations are not prohibited, and that the standard to be applied by the trial court is the same as it is for

the admission of other evidence." ***Commonwealth v. Cash***, 137 A.3d 1262, 1276 (Pa. 2016) (citation omitted), ***cert. denied***, 137 S.Ct. 1202 (2017). "If the judge concludes that the jury's understanding will be enhanced and that the slow motion or freeze frame is more probative than prejudicial, then the judge should admit the evidence." ***Commonwealth v. Jordan***, 65 A.3d 318, 329 (Pa. 2013) (citation omitted), ***cert. denied***, 134 S.Ct. 1275 (2014).

Upon review, we cannot conclude that the trial court abused its discretion by admitting the slow-motion video footage in this case. We find that the trial court's opinion comprehensively discusses and disposes of this claim. Accordingly, we adopt the following rationale of the trial court as our own for purposes of appellate review of this claim:

> When the Commonwealth was preparing to present portions of the Pemberton Video in slow motion, counsel for [a]ppellant objected to presentation of the slow[-]motion video on the basis that its probative value is outweighed by its prejudicial effect against [a]ppellant in the issue of self-defense and his reasonable state of mind. ([Notes of testimony, 6/13/17, at 145.]) The Commonwealth argued that, since [a]ppellant raised the issue of self-defense, allowing the jury to view the portion of the Pemberton Video in slow motion provides the opportunity for the jury to determine whether the victim actually took a swing at [a]ppellant or whether he was merely swatting the flashlight away, as he had testified. [(***Id.***)] The trial c]ourt overruled the objection and allowed the slow-motion portion of the Pemberton Video to be played with a cautionary instruction provided to the jury.

> The Pemberton Video is recorded at a slight distance from where the assault occurred. While [a]ppellant's concerns regarding the real-time effect of reasonableness upon his actions are given consideration, it must also be of concern that the jury is not afforded a closer view of the events that occurred leading to the assault, whereas [a]ppellant was obviously within striking distance of the victim. Allowing a portion of the video to be played in slow[]motion gives the jury the ability to mitigate the effect of distance. Therefore, the probative value of the slow-motion portion of the Pemberton Video outweighed its prejudicial effect in that it allowed the jury to determine whether the victim did indeed swing at the [a]ppellant as he had alleged.

Trial court opinion, 10/13/17 at 12 (citation to notes of testimony reformatted).

Moreover, we emphasize that our supreme court has repeatedly recognized that "when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (citations omitted), *cert. denied*, 135 S.Ct. 164 (2014); *see also Commonwealth v. Sherwood*, 982 A.2d 483, 497-498 (Pa. 2009) (finding that cautionary instructions were sufficient to overcome the prejudicial effect of prior bad acts evidence), *cert. denied*, 559 U.S. 1111 (2010). Jurors are presumed to follow the trial court's instructions. *Commonwealth v. Elliott*, 80 A.3d 415, 445 (Pa. 2013), *cert. denied*, 135 S.Ct. 50 (2014). Thus, any potential prejudice that may have resulted from the introduction of this slow-motion video footage at trial was cured by the trial court's

cautionary instruction to the jury. (**See** notes of testimony, 6/13/17 at 146-147.)

For the foregoing reasons, we affirm appellant's August 23, 2017 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2018