2024 PA Super 136

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MATTHEW GIBSON | : | |
| | : | |
| Appellant | : | No. 1460 MDA 2023 |

Appeal from the PCRA Order Entered June 5, 2023
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0005146-2019

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

OPINION BY PANELLA, P.J.E.:                    **FILED: JULY 2, 2024**

Matthew Gibson appeals *pro se* from the order denying his timely first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546. On appeal, Gibson raises ineffectiveness claims against trial counsel, direct appeal counsel, and PCRA counsel. After careful review, we affirm.

We previously reiterated the factual history of this case on direct appeal as follows:

> During the early morning hours of July 7, 2019, a surveillance camera at the Alert Club in Lancaster, Pennsylvania captured an interaction between [] Gibson [] and John Ackerman ("Mr. Ackerman"). The surveillance footage shows [Gibson] approach Mr. Ackerman while Mr. Ackerman is seated at the bar with his then-girlfriend, Melissa Hernandez ("Ms. Hernandez"). [Gibson] initiates a conversation with Mr. Ackerman and, as the two men continue speaking, [Gibson] appears increasingly agitated. The footage shows [Gibson] push away Scott Groff ("Mr.

Groff"), a friend of Mr. Ackerman, as Mr. Groff attempts to intercede in the conversation.

Mr. Ackerman appears to express confusion as [Gibson] continues speaking. Approximately one minute after the conversation started, the bartender approaches and appears to attempt to diffuse the situation. Mr. Ackerman, who is positioned with his back to the bar, turns to look at the bartender. [Gibson] continues speaking and Mr. Ackerman turns his head back toward [Gibson]. Then, as Mr. Ackerman turns back toward the bartender, the camera clearly captures [Gibson] unexpectedly punch Mr. Ackerman in the head. The single, unanticipated blow causes Mr. Ackerman to appear to go immediately limp as his head takes the impact. Mr. Ackerman loses consciousness and falls backward onto floor. [Gibson] - who is visibly larger than Mr. Ackerman - appears to make at least two more swinging motions before Mr. Groff physically restrains [Gibson] to prevent him from advancing toward Mr. Ackerman. Mr. Ackerman remains on the floor for the remaining two minutes of the security footage.

Mr. Ackerman was driven by ambulance to the hospital where he spent four days in the neuro trauma unit. As a result of the punch, Mr. Ackerman lost two front teeth, underwent three jaw surgeries that included placement of a cage and a plate, and had his jaw wired shut for eight weeks. [Gibson] was subsequently charged with Aggravated Assault and a jury trial was held on November 16 and 17, 2021.

Mr. Ackerman testified at trial and recalled that while he was sitting at the bar with Ms. Hernandez, [Gibson] "walked up and kind of ... got in [his] face," but was unable to remember anything that [Gibson] said during the conversation and could not recall [Gibson] punching him in the face - his next memory was waking up in the hospital. Mr. Ackerman testified that, since being discharged from the hospital, part of his treatment has included undergoing regular MRIs. Additionally, Mr. Ackerman testified that since [Gibson] punched him, he has had ongoing, persistent short-term memory loss and frequently experiences seizures despite taking seizure medication twice a day. Although Mr. Ackerman was not employed at the time of the incident, he testified that the seizures he experiences have prevented him from getting a job and that he has trouble going out in public due to anxiety and panic attacks. Ms. Hernandez testified at trial and observed that after [Gibson] punched Mr. Ackerman, Mr. Ackerman changed in

"a really bad way," including being unable to sit in public places with his back facing any doors and jumping when he hears loud noises.

[Mr. Groff] also testified at trial. In addition to testifying about what he observed the night of the incident, Mr. Groff testified to an encounter that he had with [Gibson] at another club several months later. Although he could not recall [Gibson's] exact words, Mr. Groff testified that when [Gibson] saw him, [Gibson] threatened him by saying something like "I know who you are, too, and I should get you too."

*Commonwealth v. Gibson*, 602 MDA 2021, at *1-2 (Pa. Super., filed August 29, 2022) (unpublished memorandum) (citing Trial Court Opinion, 7/14/21, at 1-3).

On November 17, 2020, a jury convicted Gibson of aggravated assault. Following review of a court-ordered presentence investigation report ("PSI"), the trial court sentenced Gibson to six and one-half to thirteen years' incarceration. The court also ordered Gibson to have no contact with Ackerman. Gibson filed a timely post-sentence motion to modify sentence, which was denied.

Gibson filed a timely direct appeal, in which he challenged the sufficiency of the evidence, the admission of testimony, and the conditions of his probation. We vacated the no-contact provision of his sentence but affirmed the judgment of sentence in all other respects. *See id.* at *5. Gibson did not seek allowance of appeal with the Pennsylvania Supreme Court.

On October 31, 2022, Gibson filed the instant timely PCRA petition. Counsel was appointed but did not file an amended petition. Instead, counsel

filed a **Turner/Finley**[1] no-merit letter. Counsel addressed Gibson's numerous claims of ineffective assistance of counsel and concluded that none had merit.

On May 8, 2023, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, based on counsel's **Turner/Finley** letter. On the same day, the PCRA court issued an order granting counsel leave to withdraw.

Gibson subsequently filed a *pro se* motion for the appointment of appellate counsel. On May 25, 2023, Gibson filed a *pro se* response to the Rule 907 notice.

On June 5, 2023, the PCRA court entered an order dismissing Gibson's PCRA petition, noting that the court had not received a response to the Rule 907 notice. On the same day, the PCRA court entered an order denying Gibson's motion for the appointment of appellate counsel.

On June 9, 2023, the PCRA court entered an amended order dismissing the PCRA petition. The order was nearly identical to the original order but clarified that while it had initially stated Gibson had not responded to the Rule 907 notice, the court subsequently received Gibson's "907 Response" that had

---

[1] Counsel petitioning to withdraw from PCRA representation are required to proceed under **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). Counsel must review the record, submit a "no-merit" letter evaluating the issues the petitioner wishes to address and explaining their lack of merit, request permission to withdraw, and send the "no-merit" letter and petition to withdraw to their client along with an explanation of their right to hire new counsel or proceed *pro se*.

not previously appeared on the electronic docket. The court indicated that the response did not affect its decision. This timely appeal followed.

On appeal, Gibson argues (1) the PCRA court erred in denying his request for appellate counsel in violation of Pa.R.Crim.P. 904(F) and **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021); (2) all prior counsel were ineffective for failing to challenge Groff's testimony regarding the separate encounter with Gibson as inadmissible prior bad acts evidence pursuant to Pa.R.E. 404(b); (3) all prior counsel were ineffective for failing to brief, argue, and point to correct legal authorities on the issue of Ackerman's medical records which would have proven there was insufficient evidence in this case, and (4) all prior counsel were ineffective for failing to properly argue a challenge to the discretionary aspects of sentence.

Our "standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Walters**, 135 A.3d 589, 591 (Pa. Super. 2016) (citation omitted).

In his first issue, Gibson argues the PCRA court erred in denying his request to appoint new appellate counsel.

"[A] criminal defendant has a right to representation of counsel for purposes of litigating a first PCRA petition through the entire appellate

- 5 -

process." ***Commonwealth v. Robinson***, 970 A.2d 455, 457 (Pa. Super. 2009) (*en banc*) (citations omitted); ***see also*** Pa.R.Crim.P. 904(C). However, this Court has recognized that there are limits on this rule-based right.

> [W]hen counsel has been appointed to represent a petitioner in [PCRA] proceedings as a matter of right under [Rule 904(C)] and when that right has been fully vindicated by counsel being permitted to withdraw under the procedure authorized in ***Turner***[*/**Finley**], new counsel shall not be appointed and the petitioner, or appellant, must thereafter look to his or her own resources for whatever further proceedings there might be.

***Commonwealth v. Maple***, 559 A.2d 953, 956 (Pa. Super. 1989) (footnote omitted).

Here, PCRA counsel was appointed as required by Rule 904(C). Subsequently, PCRA counsel was permitted to withdraw from representation pursuant to the procedures outlined in ***Turner/Finley***. While Gibson purported to contest counsel's withdrawal, the only challenge Gibson preserved relative to the order granting PCRA counsel's petition to withdraw under ***Turner/Finley*** was Gibson's assertion that he "is in need of … appointed counsel to perfect [an] appeal" to address PCRA counsel's ineffectiveness pursuant to ***Bradley***. *Pro Se* Response to Rule 907 Notice, at ¶ 3, 5. The PCRA court addressed Gibson's assertion in the June 9, 2023, amended order dismissing the PCRA petition. Specifically, the PCRA court rejected the assertion as Gibson had failed to "specifically enumerate PCRA counsel's alleged ineffectiveness." Order, 6/9/23, at 2 n.1. We agree. Gibson has failed to raise any specific reason either that counsel's withdrawal was

improper, or why counsel was ineffective. Gibson has presented no basis upon which to disturb the PCRA court's ruling on PCRA counsel's motion to withdraw pursuant to **Turner/Finley**.

There were no meritorious issues, and "once the [PCRA] court permits PCRA counsel to withdraw after filing a **Turner**/**Finley** 'no-merit' letter, an appellant is no longer entitled to the appointment of counsel on appeal." **Commonwealth v. Shaw**, 217 A.3d 265, 268 n.3 (Pa. Super. 2019) (citation omitted). With respect to the PCRA court's denial of Gibson's request for the appointment of new PCRA counsel, we conclude there was no error because Gibson was not entitled to the appointment of counsel after PCRA counsel was properly permitted to withdraw. **See id**.; **Maple**, 559 A.2d at 956.

In his remaining issues, Gibson raises layered claims of ineffectiveness against PCRA counsel, direct appeal counsel, and trial counsel. We presume counsel is effective, and an appellant bears the burden to prove otherwise. **See Commonwealth v. Bennett**, 57 A.3d 1185, 1195 (Pa. 2012). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. **See Strickland v. Washington**, 466 U.S. 668, 687-88 (1984); **Commonwealth v. Kimball**, 724 A.2d 326, 330-32 (Pa. 1999). An appellant must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome

of the proceedings would have been different. ***See Commonwealth v. Solano***, 129 A.3d 1156, 1162-63 (Pa. 2015). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***See id***. at 1163. "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1044 (Pa. Super. 2019) (citation omitted). Further:

> Where the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney.
>
> Layered claims of ineffectiveness are not wholly distinct from the underlying claims, because proof of the underlying claim is an essential element of the derivative ineffectiveness claim. In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

***Commonwealth v. Rykard***, 55 A.3d 1177, 1190 (Pa. Super. 2012) (citations, quotation marks, and brackets omitted). In any event, it is well settled that "counsel cannot be deemed ineffective for failing to raise a meritless claim." ***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (citation omitted).

In his first claim of ineffectiveness, Gibson argues all prior counsel were ineffective for failing to challenge the admission of Groff's testimony.

Preliminarily, we find the underlying claim has been previously litigated. ***See*** 42 Pa. C.S.A. § 9543(a)(3). Gibson raised a claim challenging Groff's

testimony on direct appeal. We earlier concluded that any error in admitting

Groff's testimony was harmless, reasoning as follows:

> There was overwhelming evidence of Gibson's intent and guilt in assaulting [Ackerman]. As seen from the video of the assault, Gibson initiated a conversation with [Ackerman] and became more aggressive throughout the conversation. Then, while [Ackerman] had his head turned towards the bartender, Gibson punched [Ackerman] one time with such force that [Ackerman]'s head snapped backward, and he fell to the ground having [been] knocked unconscious. Based on this evidence, it is clear beyond a reasonable doubt that any error from the admittance of Groff's testimony did not contribute to the verdict in this case and any prejudicial effect was insignificant.

*Gibson*, 602 MDA 2021, at *3.

Based on the above findings, we cannot find Gibson suffered any

prejudice based on the underlying claim. As such, Gibson is not due any relief

on this layered ineffectiveness claim.

In his next issue, Gibson contends all prior counsel were ineffective for

failing to brief, argue, and point to correct legal authorities on the issue of

Ackerman's medical records, which would have proven there was insufficient

evidence in this case. Specifically, Gibson argues that the Commonwealth was

required to prove serious bodily injury as an element of aggravated assault

and claims the only way the Commonwealth could prove serious bodily injury

is through medical records. *See* Appellant's Brief, at 19.

Gibson fails to cite to any authority for his assertion that the only way

to prove serious bodily injury is by producing a doctor's testimony or medical

records, and we know of no such authority. Accordingly, his claim could be

waived on this basis alone. *See Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa. Super. 2008) (finding issue waived where appellant failed to properly develop claim and set forth applicable case law).

Moreover, while Gibson purports to be challenging the finding of "serious bodily injury," his argument focuses almost exclusively on the sufficiency of the element of intent or malice. Gibson previously litigated this issue on direct appeal, when Gibson challenged the sufficiency of the evidence regarding his conviction for aggravated assault, arguing the Commonwealth failed to prove he acted recklessly in causing serious bodily injury to the victim. Notably, in so arguing, Gibson conceded that "serious bodily injury unfortunately occurred." *Gibson*, 602 MDA 2021, at *3 (citing to Gibson's appellate brief). Gibson also cited to the same legal authorities as he does now, including his reliance on *Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995), which this Court already found distinguishable. Specifically, we found as follows:

> Gibson's reliance on *O'Hanlon* is misplaced as that case is easily distinguishable. O'Hanlon was driving under the influence of alcohol, ran a red light, and hit another vehicle resulting in serious injury to an occupant of the other vehicle. Our Supreme Court concluded that O'Hanlon's behavior did not rise to the level of intent required by the aggravated assault statute, namely, recklessness "under circumstances manifesting extreme indifference to the value of human life." The Court concluded that bare recklessness, without evidence to support the increased degree of recklessness required for aggravated assault, was not enough.
>
> This case is not in the same category as *O'Hanlon*. Rather, it is more like [*Commonwealth v. Burton*, 2 A.3d 598 (Pa.

- 10 -

Super. 2010)]. There, we found sufficient evidence to support a conviction for aggravated assault where the defendant punched the victim in [the] head once, while the victim was not looking. The victim was knocked unconscious, and afterward, the defendant said, "I got you, I got you, I told you I was going to get you" while smiling and laughing. **Burton**, 2 A.3d at 600. In this case, Gibson told the victim he could "bitch slap" him, and then punched him in the head while the victim was not looking. Gibson hit him with such force that the victim immediately fell to the ground and did not get up, having been knocked unconscious. As in **Burton**, the evidence here was sufficient to establish the *mens rea.*

**Gibson**, 602 MDA 2021, at *4.

We agree with this Court's previous finding that this case bears no resemblance to **O'Hanlon**. There is no doubt that Gibson actually sought to hurt Ackerman. Gibson provoked an altercation with Ackerman and landed a blow when the victim was not on guard. Even now on appeal, Gibson maintains that his actions were warranted because of alleged prior behavior by Ackerman towards Gibson's girlfriend. **See** Appellant's Brief, at 21, 23.

The following factors can be utilized in ascertaining whether a defendant intended to inflict serious bodily injury by one blow: 1) if the defendant "was disproportionately larger or stronger than the victim;" 2) whether the defendant would have escalated his attack but was restrained from doing so; 3) whether the defendant was in possession of a weapon; and 4) "statements [made] before, during, or after the attack which might indicate [defendant's] intent to inflict further injury upon the victim." **Commonwealth v. Alexander**, 383 A.2d 887, 889 (Pa. 1978) (citation omitted). In **Alexander**, none of those circumstances was present; instead, the defendant "delivered

one punch and walked away." *Id*. (citation omitted). The Court therefore concluded that the evidence was not sufficient to support the defendant's conviction of aggravated assault.

While Gibson repeatedly argues that his case is similar, simply involving one-punch, he ignores the remainder of the evidence. Gibson was noticeably larger than Ackerman. Gibson's actions and statements before and after the assault confirm that he intended to inflict Ackerman's injuries. Gibson aggressively initiated a confrontation with Ackerman, whose only response was exhibiting confusion at the confrontation. After the attack, Gibson had to be restrained while attempting to throw more punches. While Gibson was being restrained, Ackerman was on the ground, unconscious.

As Gibson's issue is either waived, previously litigated, or without merit, we decline to grant him relief on this issue.

In his final issue, Gibson argues all prior counsel were ineffective for failing to properly argue a challenge to the discretionary aspects of sentence. We find this issue is waived.

While Gibson frames this claim in terms of ineffective assistance of counsel, he fails to present any argument regarding such a claim in the argument section of his brief. Instead, Gibson concludes his argument after the above three issues. Accordingly, this issue is waived. *See Commonwealth v. Williams*, 959 A.2d at 1258.

Notably, Gibson included a separate concise statement pursuant to Pa.R.A.P. 2119(f), in which he attempts to challenge the discretionary aspects of sentence outright, without any mention of ineffectiveness. However, it is well-settled that "[c]hallenges to the discretionary aspects of sentencing are not cognizable under the PCRA." **Commonwealth v. Fowler**, 930 A.2d 586, 593 (Pa. Super. 2007) (citations omitted). Moreover, to the extent Gibson thought a Rule 2119(f) statement on its own was sufficient to preserve an argument, this is simply not the case. Even on direct appeal, a Rule 2119(f) statement must still be followed by an argument on the merits in the argument section of the brief. **See** Pa.R.A.P. 2119(f) ("The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence").

In any event, despite Gibson's assertion to the contrary, trial counsel did challenge the discretionary aspects of sentence in a post-sentence motion. **See** Post Sentence Motion to Modify Sentence, 4/1/2021. Specifically, trial counsel argued the sentence imposed was manifestly excessive; the court erred by not providing specific and adequate reasons for the sentence; and the court failed to properly consider mitigating factors. The trial court denied the motion, noting the sentence imposed was at the lower end of the standard guideline range. Further, the court explicitly noted its consideration of the PSI. As such, even if not waived, this issue is without merit.

As all of Gibson's issues are waived and/or without merit, we affirm the order denying Gibson's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/02/2024